HERSHAL WEBER, PETITIONER $v$. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27369–10L.            Filed May 7, 2012.

In 2007 P filed a Federal income tax return for 2006 reporting an overpayment and electing to have it applied to his 2007 estimated income tax. However, in 2007 R determined that P was liable for an I.R.C. sec. 6672 penalty (attributable to unpaid trust fund taxes of C) and applied P's 2006 income tax overpayment to that penalty liability instead. In 2008 the balance of C's trust fund tax liability was satisfied by third-party payments. When P thereafter filed his 2007 Federal income tax return in 2008, he claimed a credit thereon for the overpaid 2006 income tax, thereby reporting a 2007 income tax overpayment, and elected to have that asserted 2007 overpayment applied to his 2008 estimated income tax. The IRS notified P that it adjusted his 2007 credits downward to eliminate the claimed 2006 income tax overpayment, thereby eliminating any overpayment for 2007, and yielding a balance due. When P filed his 2008 Federal income tax return in 2009, he nonetheless claimed a credit thereon for overpaid 2007 income tax (which consisted solely of the previously disallowed credit elect overpayment from 2006). The IRS notified P that it adjusted his 2008 credits downward to eliminate the claimed 2007 income tax overpayment, yielding a balance due greater than he had reported. When P did not pay the balance due for 2008, R issued to P a notice of proposed levy, and P requested a hearing under I.R.C. sec. 6330(b). At the hearing P contended that his I.R.C. sec. 6672 penalty was overpaid and that his 2008 liability would be satisfied if that overpayment were applied to his 2008 liability. R determined to proceed with the levy to collect P's 2008 Federal income tax liability. *Held*: P is not entitled to apply a credit elect overpayment from 2007 toward his 2008 income tax liability, because after application of his 2006 income tax overpayment to his I.R.C. sec. 6672 penalty liability, he had no 2006 overpayment available for crediting

348

to 2007 and therefore no 2007 overpayment available for crediting to 2008. *Held, further*, in a hearing under I.R.C. sec. 6330 concerning collection of P's unpaid 2008 income tax liability, we do not have jurisdiction to adjudicate P's claim of an I.R.C. sec. 6672 penalty overpayment.

*Donald Jay Pols*, for petitioner.
*Deborah Aloof*, for respondent.

### OPINION

GUSTAFSON, *Judge*: This is a "collection due process" (CDP) appeal pursuant to section 6330(d),[1] in which petitioner Hershal Weber asks us to review a determination by the Office of Appeals (Appeals) of the Internal Revenue Service (IRS) to proceed with a levy in order to collect his income tax for the year 2008. The issue is whether the tax that the IRS proposes to collect has already been paid by Mr. Weber's alleged overpayment of a section 6672 penalty liability. Respondent, the Commissioner of Internal Revenue, moved for summary judgment, and Mr. Weber filed an opposition supported by exhibits. We will grant the Commissioner's motion.

### *Background*

For purposes of the Commissioner's motion, we assume correct the facts asserted by Mr. Weber and supported by his exhibits, as well as facts demonstrated by the Commissioner that Mr. Weber did not dispute.

*2006 income tax*

In 2006 Mr. Weber earned income from which Federal income tax was withheld. In October 2007 Mr. Weber filed his 2006 Federal income tax return. On that return he reported an overpayment of $46,717 (consisting entirely of amounts withheld in 2006) and elected (pursuant to 26 C.F.R. section 301.6402–3(a)(5), Proced. & Admin. Regs.) to have that overpayment applied to his estimated income tax for the succeeding year, i.e., 2007. We assume that he had in fact overpaid his 2006 liability in this amount. (Tax year

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

2006 is not at issue here, but the 2006 overpayment is relevant to the 2008 tax that is at issue.)

*Trust fund penalty liability*

Mr. Weber evidently had some connection to S&G Services, Inc. (S&G). The IRS determined that in three quarters of calendar year 2005, S&G had failed to pay over "trust fund" taxes withheld from its employees' wages pursuant to sections 3102 and 3402. By July 2007 the IRS determined that Mr. Weber had been a "responsible person" of S&G in 2005; and on July 17, 2007, the IRS therefore assessed penalties against Mr. Weber under section 6672(a) in amounts totaling $1,002,339.[2] The record indicates that the IRS determined that one or more other individuals were also responsible persons of S&G and assessed section 6672 penalties against them, as against Mr. Weber.

Mr. Weber's liability for that section 6672 penalty is not at issue here, but it is relevant to Mr. Weber's contentions, as we explain below. Mr. Weber states that he "neither disputes nor admits the merits of this trust Fund Recovery Penalty in this proceeding", but in his administrative claim for refund (discussed below) he contends that the assessment was erroneous.

*Satisfaction of the trust fund penalty liability*

In 2007 and 2008, various payments were made against the unpaid trust fund tax liabilities of S&G or against the corresponding penalty liabilities under section 6672. Most important to this suit is a credit against Mr. Weber's section 6672 penalty liability made from his 2006 income tax overpayment: By letter dated November 12, 2007—i.e., before the end of tax year 2007 and long before Mr. Weber filed his 2007 return—the IRS advised Mr. Weber that his reported 2006 overpayment of $46,717 had been applied *not* to his 2007 estimated income tax but instead to his section 6672 penalty liability. Although Mr. Weber's 2006 tax return was filed in October 2007 and processed in November 2007, the IRS applied these credits with an effective date of July 17,

---

[2] The tally of these assessments that was attached to Mr. Weber's request for a CDP hearing overstated the penalty for the quarter ended 12/31/2005 by $10,000 and therefore overstated the total by the same amount.

2007—the date on which the section 6672 penalty had been assessed.

Almost a year later, in June 2008, the IRS received, from responsible persons other than Mr. Weber, a payment of $233,000 toward S&G's liabilities. In August 2008 the IRS executed an agreement with Mr. Weber (on Form 12257, "Summary Notice of Determination, Waiver of Right to Judicial Review of a Collection Due Process Determination, and Waiver of Suspension of Levy Action"), in which Mr. Weber acknowledged that he had received collection notices concerning the section 6672 penalty liabilities but in which he waived his right to a CDP hearing before Appeals concerning those liabilities. The agreement stated as follows the IRS Office of Appeals' determination with regard to Mr. Weber:

The trust fund portion of the liabilities have [sic] been satisfied at the corporate level by the redesignation of a $233,000 payment made on 6/19/2008.

The satisfaction of the trust fund portion of the tax at the corporate level will offset to your [section 6672 penalty] account resulting in no balance due remaining.

Levy action [as to the section 6672 penalty] is no longer needed and will not take place.

The IRS has adjusted the account for Mr. Weber's section 6672 penalty not only by payments that he made but also by payments from the other responsible persons. IRS transcripts for Mr. Weber's penalty liability for the three quarters at issue show small balances due, but for purposes of the Commissioner's motion we assume that if the "redesignation" to which the IRS agreed is properly accomplished, then the IRS has collected (through his section 6672 penalty payments, the penalty payments by other responsible persons of S&G, and S&G's own payments of the trust fund liabilities) a total amount greater than S&G's trust fund liabilities.

On August 14, 2009, Mr. Weber filed claims for refund with the IRS by submitting Forms 843, "Claim for Refund and Request for Abatement". On February 16, 2010, the IRS disallowed those refund claims. On February 14, 2012, Mr. Weber filed a refund suit in Federal District Court challenging that disallowance. *Weber v. United States*, No. 1:12–

CV–732 (E.D.N.Y.). Our record does not show any disposition of that refund suit.

*2007 income tax*

Our record does not show precisely when in 2008 Mr. Weber filed his 2007 Federal income tax return, but we assume (in his favor) that he filed it after August 2008—i.e., after Appeals had determined he had "no balance due remaining" on his section 6672 liability. On that 2007 return, Mr. Weber reported a tax liability of $75,089 that we assume to be correct. In addition to claiming withholding credits of $68,310 and excess Social Security remittances of $1,231, on line 65 ("2007 estimated tax payments and amount applied from 2006 return") he reported credits totaling $46,717—i.e., the amount of his claimed 2006 overpayment—and he therefore reported an overall overpayment for 2007 in the amount of $41,169. On line 75 he elected to have that claimed overpayment applied to his estimated income tax for the succeeding year (i.e., 2008).

As we have noted, however, before that time the IRS's November 2007 letter had advised him that his reported 2006 overpayment had *not* been applied to his 2007 estimated income tax but rather to his section 6672 penalty liability.

The IRS therefore evidently spotted as excessive the credit claimed on line 65, and it sent Mr. Weber a letter dated November 24, 2008, advising him that it had reduced the amount of his 2007 estimated tax payments and that he therefore still owed $5,962[3] of the tax he had reported due for 2007. Our record does not show whether or when Mr. Weber paid that liability, and 2007 is not at issue in our case.

*2008 income tax*

For the year at issue—i.e., 2008—Mr. Weber filed his Federal income tax return in September 2009. He reported a tax liability that we assume to be correct. He also reported, on line 63 of that 2008 return, a credit amount of $61,169 that

---

[3] This amount was determined by taking Mr. Weber's tax liability of $75,089 less withholding credits of $68,310 and excess Social Security remittances of $1,231, which resulted in an underpayment of $5,548. To that underpayment, the Commissioner applied penalties of $221.92 and interest of $192.11, for an unpaid balance of $5,962.03.

included a supposed overpayment of $41,169 from his 2007 return. Of course, 22 months before he filed his 2008 return he had received the IRS's November 2007 letter indicating that his 2006 overpayment had *not* been applied to 2007 but had instead been applied to his penalty liability, leaving him with no overpayment for 2007 that could be applied to 2008.

Consistent with its prior action as to 2007, the IRS sent Mr. Weber a letter dated October 19, 2009, advising him that it had adjusted his 2008 estimated tax payments (i.e., to reduce them by the claimed 2007 overpayment of $41,169) and that he had a balance due on his 2008 income tax account of $41,084 (on which penalties and interest were also due).

*Collection action for 2008 income tax*

When Mr. Weber did not pay the 2008 balance due, the IRS sent him a "Final Notice—Notice of Intent to Levy and Notice of Your Right to a Hearing". On April 2, 2010, the IRS received from Mr. Weber a Form 12153, "Request for a Collection Due Process or Equivalent Hearing," by which he requested a CDP hearing pursuant to section 6330. He attached to that form a "Calculation of trust Fund Penalty Overpayment", asserting that the "Total Overpayment for trust Funds" was $71,394.04. [4] The IRS granted him that hearing before its Office of Appeals.

At the hearing Mr. Weber's representative argued that, because S&G's trust fund liability had been fully satisfied (by payments other than Mr. Weber's), the IRS should correct its prior actions as to Mr. Weber's income tax liabilities for 2006 and 2007, so that his 2006 income tax overpayment would be credited to his 2007 income tax liability as originally requested, and the resulting 2007 overpayment would then be credited against—and would satisfy—his 2008 income tax liability. He argued that if those actions were taken, his 2008 income tax liability would be satisfied and no levy would be appropriate.

---

[4] Mr. Weber derived this "overpayment" by taking the total amount of payments made by himself, by other "responsible persons", and by S&G—$1,083,733.28—against the total amount of the trust fund penalties assessed against him—$1,002,339.24, but mistakenly stated by him as $1,012,339.24. Mr. Weber concluded that the difference, i.e., $71,394.04, was an overpayment. Mr. Weber then reasoned that since the trust fund taxes had been overpaid by $71,394.04, his entire payment—$46,717—was unnecessary for satisfying these liabilities.

On November 10, 2010, Appeals issued a notice of determination upholding the proposed levy. An attachment to the notice of determination stated:

The Office of Appeals does not have jurisdiction on the other tax periods that you believe caused the liability on tax period 2008.

On December 10, 2010, Mr. Weber filed a timely petition with this Court challenging that determination. At the time he filed his petition, Mr. Weber resided in New York.

## *Discussion*

### I. *General legal principles*

#### A. *"Collection due process"*

At issue here is the IRS's proposal to collect Mr. Weber's 2008 income tax liability by means of a levy. Section 6330 provides that, before the IRS may make a levy on any property pursuant to section 6331, the taxpayer is entitled to notice of the Commissioner's intent to levy and of the taxpayer's right to a hearing before the IRS Office of Appeals. Sec. 6330(a) and (b). That hearing addresses "the taxable period to which the unpaid tax specified [in the notice of proposed levy] * * * relates". Sec. 6330(b)(2). At the agency-level CDP hearing, the taxpayer may raise "any relevant issue relating to the *unpaid tax* or the proposed levy", sec. 6330(c)(2)(A) (emphasis added)—language important here, for reasons we explain below. The taxpayer may make challenges to "the appropriateness of collection actions" and may make "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." Sec. 6330(c)(2)(A). The appeals officer must consider those issues, verify the requirements of applicable law and administrative procedure have been met, and consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person [involved] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3).

Mr. Weber does not complain of any failure by the IRS to comply with these provisions, except that he contends it erred by failing to apply against his 2008 income tax liability

his claimed credit elect overpayment from 2007 (derived from his claimed credit elect overpayment from 2006), or in the alternative, to credit to his 2008 liability his (alleged) section 6672 penalty overpayment, which he asks us to determine. Both parties ask us to review for abuse of discretion, *see Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006), the determination by Appeals to proceed with collection. As we show below, Mr. Weber's contention involves the assertion that Appeals made errors of law; and if a determination is indeed based upon an error of law, then by definition it constitutes an abuse of discretion. *See Swanson v. Commissioner*, 121 T.C. 111, 119 (2003).

B. *Summary judgment*

Under Rule 121 (the Tax Court's analog to Rule 56 of the Federal Rules of Civil Procedure), the Court may grant summary judgment where there is no genuine issue of any material fact and a decision may be rendered as a matter of law. The moving party (here, the Commissioner) bears the burden of showing that no genuine issue of material fact exists, and the Court will view any factual material and inferences in the light most favorable to the nonmoving party. *Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (same standard under Fed. R. Civ. P. 56). "The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion for summary judgment." *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982).

In this case we assume the facts as shown by Mr. Weber, the non-moving party, or as shown by the Commissioner and not disputed by Mr. Weber.

C. *Credit elect overpayments*

Mr. Weber contends that the IRS erred by failing to apply his claimed 2006 income tax overpayment against his 2007 income tax liability, and by failing to apply his claimed 2007 income tax overpayment against his 2008 income tax liability at issue here. When a taxpayer has made an overpayment of tax, the IRS has discretion to credit that overpayment to

another liability—a discretion given to it by section 6402(a),[5] which provides:

In the case of any overpayment, the Secretary * * * *may* credit the amount of such overpayment * * * against *any* liability in respect of an internal revenue tax on the part of the person who made the overpayment and *shall* * * * refund any balance to such person. [Emphasis added.]

That is, the IRS "shall" refund any overpayment not otherwise credited, but the IRS "may credit" an overpayment to another liability.

In the case of a prior year's overpayment reported on the succeeding year's tax return (such as is at issue here), Congress underscored the IRS's discretion to allow credits or overpayments by providing in section 6402(b):

The Secretary is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding taxable year.

Pursuant to that authority, the Secretary promulgated 26 C.F.R. section 301.6402–3(a)(5), Proced. & Admin. Regs., which provides:

If the taxpayer indicates on its return (or amended return) that all or part of the overpayment shown by its return (or amended return) is to be applied to its estimated income tax for its succeeding taxable year, such indication shall constitute an election to so apply such overpayment * * *.

[5]*See Kaffenberger v. United States*, 314 F.3d 944, 958 n.4 (8th Cir. 2003); *IRS v. Luongo (In re Luongo)*, 259 F.3d 323, 335 (5th Cir. 2001); *Kalb v. United States*, 505 F.2d 506, 509 (2d Cir. 1974); *Estate of Bender v. Commissioner*, 86 T.C. 770, 778–779 (1986) (discussing *Kalb*, *aff'd in part, rev'd in part*, 827 F.2d 884 (3d Cir. 1987); *Georgeff v. United States*, 67 Fed. Cl. 598, 608 (2005) ("From the plain language of the statute, the IRS has no obligation to credit any individual's tax overpayment to specific preexisting outstanding tax liabilities upon the taxpayer's request. The statute, 26 U.S.C. § 6402, gives the IRS the discretionary authority to credit tax overpayments to any tax liability. *See Northern States Power Co. v. United States*, 73 F.3d 764, 766–67 (8th Cir.), *cert. denied*, 519 U.S. 862, 136 L. Ed. 2d 110, 117 S. Ct. 168 (1996); *In re Ryan*, 64 F.3d 1516, 1523–24 (11th Cir. 1995) (holding that 26 U.S.C. § 6402 gives the IRS the discretionary authority to credit tax overpayments to any tax liability); *Pettibone Corp. v. United States*, 34 F.3d 536, 538 (7th Cir. 1994); *Acker v. United States*, 519 F. Supp. 178, 182 (N.D. Ohio 1981) (finding that the government may apply tax overpayments to subsequent years' liabilities, but is not required to do so). The statute and case law are clear that the discretionary authority of the IRS supersedes any desires or wishes on the part of a taxpayer to have their overpayment credited to specific, preexisting, tax liabilities."). For purposes of the Commissioner's motion for summary judgment, we assume that, in a collection due process case, we can review for an abuse of discretion the IRS's decision under section 6402 to credit an overpayment to a nondetermination year rather than to the year at issue. *Cf. N. States Power Co. v. United States*, 73 F.3d 764, 768 (8th Cir. 1996) ("In a proper case, the failure to credit overpayments might be reviewable on an abuse-of-discretion basis"); *Winn-Dixie Stores, Inc. v. Commissioner*, 110 T.C. 291, 294–296 (1998); *see also Orian v. Commissioner*, T.C. Memo. 2010–234, slip op. at 13–17 (and cases cited thereat).

"The subject of such an election is known as a 'credit elect overpayment' or simply a 'credit elect.'" *FleetBoston Fin. v. United States*, 483 F.3d 1345, 1347 (Fed. Cir. 2007). However, section 301.6402–3(a)(6) makes it clear that the taxpayer's election to apply an overpayment to the succeeding year is not binding on the IRS:

Notwithstanding paragraph (a)(5) of this section, *the Internal Revenue Service*, within the applicable period of limitations, *may credit any overpayment* of individual, fiduciary, or corporation income tax, including interest thereon, *against * * * any outstanding liability for any tax* (or for any interest, additional amount, additions to the tax, or assessable penalty) *owed by the taxpayer* making the overpayment * * *. [Emphasis added.]

Thus, a taxpayer may request a credit elect overpayment, but the IRS has discretion whether to allow it or instead to credit the overpayment to another liability owed by the taxpayer or to refund it.

### D. *"Responsible person" penalty*

The liability to which the IRS applied Mr. Weber's 2006 income tax overpayment was the penalty imposed by section 6672, sometimes known as the "responsible person penalty" or the "trust fund recovery penalty" (TFRP). An employer is required by sections 3102 and 3402 to withhold from an employee's wages and then pay over to the IRS both income tax, under section 3402, and the employee's share of Social Security and Medicare tax (i.e., Federal Insurance Contributions Act (FICA) tax), under section 3102. Under section 7501(a), "the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States"; consequently, these withheld taxes are referred to as "trust fund taxes". One of the means Congress has enacted to ensure that these trust fund taxes are paid over to the Government is section 6672, under which "the officers or employees of the employer responsible for effectuating the collection and payment of trust-fund taxes who willfully fail to do so are made personally liable to a 'penalty' equal to the amount of the delinquent taxes." *Slodov v. United States*, 436 U.S. 238, 244–245 (1978). Section 6672(a) provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to

evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. * * *

The trust fund penalty of section 6672 is a means of collecting from the responsible persons (here, Mr. Weber and others) the unpaid trust fund liability of the employer (here, S&G). The IRS collects the trust fund liability no more than once.[6] Consequently, the IRS cross-references payments against the trust fund liability itself and payments against the section 6672 penalty liabilities of responsible persons,[7] and those payments ultimately reduce the amount of the penalty liability of each responsible person.[8] However, where there are multiple responsible persons who have paid penalties under section 6672 arising from the same unpaid trust fund taxes, the IRS faces the risk that, if it stops collecting after receiving amounts that equal the trust fund shortage, one assessed person may later prove himself *not* responsible and therefore entitled to a refund. For that reason, "the TFRP is considered 'collected' only after the passage of two years from the date of payment with no claim for refund filed by or for the payor in those two years, so there may be cases where the Service retains more than 100% payment from two or more taxpayers until the TFRP is conclusively collected". Internal Revenue Manual pt. 8.25.2.3 (Oct. 17, 2007)

---

[6] *See Avildsen v. United States (In re Avildsen Tools & Mach., Inc.)*, 794 F.2d 1248, 1254 n.10 (7th Cir. 1986) ("if the corporate trust fund tax obligations are subsequently paid by the corporation this payment may also relieve the corporate officials of their separate liability for delinquent trust fund taxes under section 6672"); *USLIFE Title Ins. Co. of Dallas v. Harbison*, 784 F.2d 1238, 1241 (5th Cir. 1986) ("as a matter of policy, it [the Government] does not retain payments exceeding the underlying withholding tax delinquency"); *Spivak v. United States*, 370 F.2d 612, 615 (2d Cir. 1967) ("Had the government's claim in the bankruptcy been defeated by an adjudication that the payments should have been credited to Lincoln [the employer], the government concedes that it would be bound to release appellants [the responsible officers], for it is its practice not to attempt enforcement of § 6672 liability if the corporate obligation is met, and an adjudication that the payments should have been credited to Lincoln would have entitled Lincoln to credits as great as its entire tax obligation."); Internal Revenue Manual (IRM) pt. 1.2.14.1.3 (Policy Statement 5–14), para. 2 (June 9, 2003) ("The withheld income and employment taxes or collected excise taxes will be collected only once, whether from the business, or from one or more of its responsible persons"), pt. 8.25.2.3(5) (Oct. 19, 2007) ("Even though the Service may make assessments against more than one responsible person for a specific quarterly liability, **it only collects the total amount once**") (bold in original).

[7] *See* IRM pt. 5.19.14.15 (Apr. 29, 2008).

[8] In addition, for the circumstance in which more than one person has been held liable for the section 6672 penalty and one of those persons believes he is entitled to contribution from one or more of the other persons, Congress has provided that a taxpayer may bring a separate suit claiming a right of contribution, pursuant to section 6672(d).

("Related TFRP Cases"), para. 5.[9] For that reason, the mere presence of a credit balance in the penalty account of a responsible person does not assure that he is entitled to a refund. In addition, the settling of the penalty account of a responsible person may be complicated by questions about liability for interest and additions to tax under section 6651(a)(3) (both by the employer on its liability for the trust fund tax in the first instance and by the responsible person on his liability for the penalty).

The liability at issue in this collection review case is Mr. Weber's unpaid 2008 income tax liability, not a section 6672 penalty. However, such a penalty was assessed against Mr. Weber; and his overpayment of 2006 income tax was credited toward that liability and not toward his 2007 income tax liability as he had requested. The IRS's refusal to alter that crediting after S&G's trust fund tax liability was satisfied by another taxpayer's payment is important to Mr. Weber's contentions here.

## II. *Whether the tax at issue is "unpaid"*

Mr. Weber complains that Appeals refused to consider a "collection alternative", but by that he really means that it failed to consider his contention that the liability at issue should be treated as having been satisfied and therefore as not "unpaid". His position was and is that, in view of the resolution of S&G's withholding tax liability, his 2006 income tax overpayment—originally credited against a section 6672 penalty to compensate for S&G's unpaid liability—should now be credited instead to his 2007 income tax liability (as he elected on his 2006 return) and that, if it is, the result will be a 2007 income tax overpayment that, when applied to his 2008 income tax liability (as he elected on his 2007 return), will satisfy that liability and render moot any further collection for 2008. Alternatively, Mr. Weber contends that, because of the satisfaction of S&G's trust fund liability from other sources, he has overpaid his section 6672 penalty,

_____

[9] *See also* IRM pt. 8.25.2.6(4) (Oct. 19, 2007) ("In related trust fund recovery penalty cases where all responsible parties are not in agreement with an Appeals settlement based on hazards of litigation, a Form 2751, Proposed Assessment of Trust Fund Recovery Penalty, should be secured from the agreeing responsible person(s). Inform the agreeing responsible person(s) by closing letter that the case can be reopened if the Department of Justice decides to join all potentially responsible persons in a refund suit before the assessment limitation period expires").

and that overpayment, if applied, would be sufficient to sat-isfy his unpaid 2008 income tax liability.

A. *The claimed credit elect overpayment*

As we have held, we have jurisdiction to consider Mr. Weber's claim of a credit elect that would satisfy the liability at issue here, but we hold that his claim of a credit elect cannot be sustained.

1. *The credit elect overpayment claimed on the 2008 return depends on the credit elect overpayment claimed on the 2007 return.*

On his tax return for the year at issue, 2008, Mr. Weber claimed a credit that included $41,169 of an asserted over-payment of 2007 income tax. If such a credit elect overpay-ment is applied to his 2008 liability as he requested, then the 2008 liability is satisfied and no levy should occur. We note that a credit elect overpayment is not a claimed overpayment of an unrelated liability that the taxpayer asks us to adju-dicate and then to offset against the different liability that is the subject of the IRS's collection efforts. Rather, the credit elect overpayment is a credit that a taxpayer is explicitly permitted by regulation to report on the income tax return for the year at issue. In such an instance—where a credit elect overpayment is claimed on the return for the year at issue—we have held that "the validity of the underlying tax liability, i.e., the amount unpaid after application of credits to which * * * [the taxpayer] is entitled, is properly at issue" in a CDP case. *See Landry v. Commissioner*, 116 T.C. 60, 62 (2001). We therefore have jurisdiction to consider Mr. Weber's contention that he is entitled to apply a credit elect overpayment from 2007 to the 2008 liability at issue here.

However, that 2007 overpayment depended in turn on the validity of a credit elect overpayment claimed on the 2007 return. Mr. Weber's tax return for 2006 had reported an overpayment and had requested it be applied as a credit against his 2007 estimated income tax. If the credit elect overpayment from 2006 claimed on the 2007 return is not allowed, then there is no overpayment from 2007 to pass on to 2008, and the 2008 liability remains unsatisfied. There-fore, to address Mr. Weber's contention, we must decide the

merits of the credit elect overpayment from 2006 as reported on the 2007 return. [10]

2. *Mr. Weber was not entitled to a credit elect overpayment on his 2007 return.*

Mr. Weber claims (and the Commissioner does not dispute) that he overpaid his 2006 income tax by $46,717. It is clear that on his 2006 return, he elected that this overpayment be applied to his 2007 estimated income tax. However, at the time Mr. Weber filed that return in 2007, a section 6672 penalty had been assessed against him and at that time had not been paid. (The payments that he now contends satisfied that liability were not made until months later.)

Thus, when the IRS received Mr. Weber's 2006 income tax return in 2007, it was confronted with the question whether to treat the 2006 overpayment as an estimated payment toward Mr. Weber's future 2007 income tax liability (which would ultimately be due in April 2008) or instead to credit the overpayment against his already due and owing liability for a section 6672 penalty. As we have shown (in part I.C. above), section 6402(a) gives the IRS broad discretion in the crediting of overpayments, and a taxpayer's election under 26 C.F.R. section 301.6402–3(a)(5) to apply an overpayment to estimated tax for the succeeding year is not binding on the IRS. *See* sec. 301.6402–3(a)(6). We see no basis for criticizing the IRS's exercise of its discretion to apply the overpayment to the due-and-owing section 6672 penalty rather than the future and only potential 2007 income tax liability. Consequently, we must say that the 2006 overpayment was properly applied to the penalty liability.

The IRS did not disallow Mr. Weber the overpayment he claimed for 2006. Rather, it allowed the claim but applied that overpayment to his outstanding liability for a section 6672 penalty. After the IRS thus allowed Mr. Weber the credit against the penalty liability, the 2006 overpayment was no longer (in the words of *Freije v. Commissioner*, 125

---

[10] As we stated in *Freije v. Commissioner*, 125 T.C. 14, 27 (2005), "our jurisdiction under section 6330(d)(1)(A) encompasses consideration of facts and issues in nondetermination years where the facts and issues are relevant in evaluating a claim that an unpaid tax has been paid." If there are scenarios in which a cascading series of multiple credit elect overpayments might implicate years or issues so remote from the year at issue that they should not fall within a CDP case, this case does not present such a scenario, and we do not here test the outer limits of our CDP jurisdiction.

T.C. 14, 26 (2005)) an "available credit". It had been used up. The Government's defense to any subsequent claim for refund of a 2006 income tax overpayment would be accord and satisfaction; the claim has already been allowed. Under section 7422(d), "The credit of an overpayment of any tax [here, 2006 income tax] in satisfaction of any tax liability [here, the section 6672 penalty] shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a *payment in respect of such tax liability* [i.e., of section 6672 penalty] at the time such credit is allowed." (Emphasis added.) [11]

As a result, if the IRS holds Mr. Weber's money wrongly, it holds it not as an overpaid 2006 income tax but as an overpaid section 6672 penalty. But there is no regulation that permits a taxpayer to elect to have an overpayment of a section 6672 penalty applied to his income tax liability, and there is no line on the Federal income tax return form that permits the reporting of an overpaid section 6672 penalty as a credit to income tax. A credit elect overpayment can be an issue in a CDP case (as in *Landry*), but Mr. Weber has no valid claim of a credit elect overpayment. After the 2006 income tax overpayment was credited against the section 6672 penalty, the 2006 income tax overpayment was no longer available for application to 2007 income tax. In the absence of that credit elect overpayment, Mr. Weber had no 2007 income tax overpayment that could be credited to his liability for 2008 income tax. The 2008 income tax liability could thus not be satisfied by cascading credit elect overpayments from 2006 and 2007.

B. *Overpayment of section 6672 penalty*

The argument remaining to Mr. Weber is that his section 6672 penalty liability has been overpaid and that the overpayment is "available" to be credited to his 2008 income tax liability. He cites our Opinion in *Freije v. Commissioner*, 125 T.C. at 26, in which we stated that—

---

[11] *See Greene-Thapedi v. United States*, 549 F.3d 530, 532 (7th Cir. 2008) ("Under section 7422(d), when the IRS applies an overpayment as a credit to a liability for a separate tax year, the taxpayer must file a refund claim for the year in which the IRS applied the credit. *See Kaffenberger v. United States*, 314 F.3d 944, 959 (8th Cir. 2003); *Republic Petroleum Corp. v. United States*, 613 F.2d 518, 525 n.19 (5th Cir. 1980)"); *see also Recchie v. United States*, 1 Cl. Ct. 726, 727 (1983) (1981 income tax overpayment applied in 1982 to a 1975 tax deficiency held to be "1975 tax * * * deemed paid in 1982 for the purpose of the statute of limitations").

a "relevant issue relating to the unpaid tax or the proposed levy" [quoting section 6330(c)(2)(A)] surely includes a claim, such as the one here, that the "unpaid tax" has in fact been satisfied by a remittance that the Commissioner improperly applied elsewhere. * * * Meaningful review of *a claim that a tax sought to be collected by levy has been paid, by means of* a remittance or *an available credit*, will typically require consideration of facts and issues in nondetermination years, as those years may constitute the years to which a remittance was applied or from which a credit originated. [Emphasis added; fn. ref. omitted.]

Mr. Weber contends that S&G's trust fund liability has been satisfied by other payments, leaving "available" the amount paid by credit from his 2006 income tax that was originally credited against his corresponding penalty assessment. And he contends in his refund claim that he did not owe the penalty at all. He asks us to hold that the resulting overpayment of section 6672 penalty is an "available credit" that could satisfy the 2008 income tax liability at issue here and should preclude the IRS from proceeding otherwise to collect that liability. But there are flaws in this contention.

1. *Threshold requirements*

Before a CDP petitioner could contend that overpayments (other than credit elect overpayments) ought to be applied to satisfy the liability at issue, he would have to show that he had satisfied the threshold requirements for claiming a refund. *See Brady v. Commissioner*, 136 T.C. 422, 427–431 (2011) (citing sections 6402, 6514). These threshold requirements include (1) the prior full payment of the liability;[12] (2) the filing of a proper administrative claim, *see* sec. 7422(a);[13]

---

[12] *See Flora v. United States*, 362 U.S. 145 (1960). Only requirements (2) through (5) as numbered here are actually implicated in section 6514, the statute that we looked to in *Brady v. Commissioner*, 136 T.C. 422 (2011). The *Flora* full-payment rule is founded on 28 U.S.C. sec. 1346(a)(1), which according to the Supreme Court's subtle reading requires full payment as a prerequisite to court review. Section 6330, by contrast, necessarily allows court review where there is "unpaid tax". If overpayment jurisdiction were read into section 6330, then a *Flora*-like full payment rule limiting that jurisdiction would be difficult to base on the statute. However, the full-payment rule would in any event be satisfied in this case. The Supreme Court observed that "excise tax deficiencies may be divisible into a tax on each transaction or event, and therefore present an entirely different problem with respect to the full-payment rule", *id.* at 171 n.37; and the courts have thereafter held that the section 6672 penalty is divisible, so that a taxpayer may litigate the penalty after having paid an amount corresponding to the tax withheld from a single employee, *see, e.g.*, *Davis v. United States*, 961 F.2d 867, 870 n.2 (9th Cir. 1992); *Bland v. Commissioner*, T.C. Memo. 2012–84, slip op. at 22 n.13. There is no question that Mr. Weber's payment of penalty exceeded the trust fund amount attributable to one employee.

[13] The requirement of section 7422(a) that a claim be filed can give rise to complicated disputes about the adequacy and validity of an "informal claim", *see United States v. Kales*, 314

Continued

(3) the timely filing of that claim, *see* sec. 6511; (4) the disallowance of the claim (or the passage of six months), *see* sec. 6532(a)(1); and (5) the timely filing of the refund suit, *see id.* The IRS disputes Mr. Weber's fulfillment of only one of these requirements—i.e., the timeliness of his August 2009 refund claim. However, we find that, for purposes of the Commissioner's motion, the claim was timely.

Under section 6511(a), the period of limitations applicable in the case of claims for refund of the section 6672 penalty is two years from the date of payment. [14] In this case, the allegedly overpaid penalty must have been paid no earlier than two years before Mr. Weber filed his refund claim in August 2009. When an overpayment of one liability arises from the application of an overpayment from another liability, the timing rules of section 6513 for the effective date of payments do not apply; rather, section 7422(d) applies. *Favret v. United States*, 92 A.F.T.R.2d (RIA) 2003–7249, 2004–1 U.S. Tax Cas. (CCH) para. 50,142 (E.D. La. 2003). Section 7422(d) provides:

> The *credit of an overpayment* of any tax in satisfaction of any tax liability *shall*, for the purpose of any suit for refund of such tax liability so satisfied, *be deemed to be a payment* in respect of such tax liability *at the time such credit is allowed*. [Emphasis added.]

Thus, the question before us is: At what time was Mr. Weber's overpayment of his 2006 income tax liability "allowed" as a credit against his section 6672 penalty? The IRS's position is that the credit was allowed on its effective date in July 2007 (requiring a refund claim no later than

---

U.S. 186 (1941), and about whether the complaint that the taxpayer files in court is at substantial variance with his administrative refund claim, *see Hertz Corp. v. United States*, 364 U.S. 122, 125–126 (1960)—disputes that may not often arise in the Tax Court's deficiency suits, but that could indeed arise in CDP cases if we had the expanded jurisdiction that Mr. Weber proposes.

[14] *See Kuznitsky v. United States*, 17 F.3d 1029, 1032–1033 (7th Cir. 1994) (and cases cited thereat); *Pham v. United States*, 42 Fed. Cl. 886, 889 (1999). Although Mr. Weber's 2006 income tax overpayment was credited against the penalty liability (and was thus paid) in 2007, his *over*payment of the section 6672 penalty arguably did not arise until the third party made the $233,000 payment in June 2008. If that third-party payment were the event that commenced the running of the two-year period of section 6511(a) for Mr. Weber, then a claim filed as late as June 2010 would have been timely. However, section 6511(a) looks to the time the tax was "paid" (not overpaid). Likewise, the corresponding look-back provision of section 6511(b)(2)(B) allows a refund of "the portion of the tax paid during the 2 years immediately preceding the filing of the claim." Given the way section 6511 operates, it is thus incumbent on the payor of section 6672 penalty to file timely protective claims for refund of his payments of penalty even if they are not (yet) "overpayments".

*July* 2009), while Mr. Weber asserts that the credit could not have been allowed until he filed his 2006 income tax return reporting such overpayment in October 2007 (requiring a refund claim no later than *October* 2009)—or more likely when the IRS processed the return in November 2007. Given that Mr. Weber filed his claim for refund on *August 14*, 2009, the determination of when the credit was "allowed" is determinative as to whether his refund claim was timely.

Section 6407 provides that a refund or credit is deemed allowed on the date "the Secretary first authorizes the scheduling of an overassessment," and 26 C.F.R. section 301.6407–1, Proced. & Admin. Regs., elaborates that the relevant date is the date an enumerated IRS official certifies the allowance of the overassessment. In the instant case, it would seem all but impossible (and the Commissioner has not shown) that the IRS actually certified Mr. Weber's 2006 overpayment before his filing of his 2006 return in October 2007. The IRS did have in hand Mr. Weber's 2006 withheld tax in July 2007; but at that time he had not yet filed his 2006 return, so the IRS could not yet know his 2006 income tax liability and could not yet know how much of that 2006 withholding would be available to credit to another liability.

The IRS's only proof of a supposed July 2007 crediting is its transcripts that show an *effective* date of the crediting—i.e., the same date that it recorded the penalty assessments. The allowance of this earlier *effective* date (which would affect, in Mr. Weber's favor, the running of interest on his penalty assessment) is not at all inconsistent with, and does not disprove, a later actual date of allowing and posting the credit.[15] Therefore, making the inferences favorable to Mr. Weber, the IRS did not "allow" the credit from his 2006 overpayment against his section 6672 penalty until sometime after it received his 2006 return in October 2007. Therefore, Mr. Weber's claim for refund submitted less than two years later in August 2009 was timely.

In previous cases in which CDP petitioners have asked us to determine an unrelated overpayment that would satisfy

[15] The IRS account transcript for Mr. Weber's penalty for the quarter ended September 30, 2005, gives for the penalty assessment an entry that includes both a "Date" of "07–17–2007" (evidently an effective date) *and* a "Cycle" of "20073108" (evidently a "posting" date, *see Dingman v. Commissioner*, T.C. Memo. 2011–116, slip op. at 17 n.15, in which the fifth and sixth digits are the "posting cycle" within the year, *see* IRM pts. 5.2.4–19 (Oct. 1, 2009), 3.17.79.2.1(9) (Jan. 1, 2012)). The transcript gives no posting date for the credit entry.

the liability that the IRS proposed to collect, the petitioners had failed to meet the threshold requirements for refund litigation, and we dismissed the cases on those grounds. *See Brady v. Commissioner*, 136 T.C. at 427 ("Assuming that it would be appropriate in this case to consider the merits of petitioner's claims of overpayments in prior years"); *Conn v. Commissioner*, T.C. Memo. 2011–166, slip op. at 14–15 ("if we assume our jurisdiction in cases governed by section 6330 may permit us to consider overpayment claims arising from nondetermination years"). However, since Mr. Weber has fulfilled those requirements, we must now address the premise "assum[ed]" in those cases and answer the question whether, in a CDP case, we have jurisdiction to determine an overpayment of an unrelated liability. We hold that we do not have that jurisdiction.

2. *Lack of refund jurisdiction in CDP proceedings*

Mr. Weber's contention proposes that we turn from the subject of his 2008 income tax liability—the liability whose collection is at issue—and address the distinct question of his section 6672 penalty liability. We do have jurisdiction to review the collection of a section 6672 penalty liability, *see, e.g.*, *Mason v. Commissioner*, 132 T.C. 301 (2009), when the IRS has issued a "determination" to proceed with collection of such a liability; but the IRS does not propose collection of any such liability for Mr. Weber. Rather, Mr. Weber asks us to find that he has overpaid that penalty liability, and then to order the IRS to apply the overpayment to his 2008 income tax (or, more precisely, asks us to hold that it would be an abuse of discretion for the IRS to do anything *other* than to apply it to his 2008 income tax liability), and to overrule Appeals's determination to proceed with a levy. Mr. Weber's argument would thus require us to adjudicate his right to a section 6672 penalty refund.

a. *Refund jurisdiction generally*

However, "Congress has indeed established a detailed refund scheme that subjects complaining taxpayers to various requirements before they can bring suit." *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 11 (2008). In *post*-payment circumstances, "[a] taxpayer seeking a refund of

taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court [*see* 28 U.S.C. sec. 1346(a)(1) (2006)] or in the United States Court of Federal Claims [*see id.* secs. 1346(a)(1), 1491(a)(1)]." *Clintwood Elkhorn*, 553 U.S. at 4.

Under the tax litigation regime Congress created, the Tax Court's principal jurisdiction (pursuant to section 6213(a)) is over *pre*-payment "deficiency cases". In a deficiency case within this Court's jurisdiction, the Tax Court has also been explicitly granted jurisdiction to determine "an overpayment of income tax for *the same taxable year*, of gift tax for the same calendar year or calendar quarter, [or] of estate tax in respect of the taxable estate of *the same decedent*". Sec. 6512(b)(1) (emphasis added). That is, the Tax Court's overpayment jurisdiction in deficiency cases is explicitly limited to determining an overpayment of the same liability already at issue. In a deficiency case involving income tax for 2008 (for example), we could determine an overpayment of 2008 income tax but could not determine an overpayment of a section 6672 penalty.

Where the Tax Court does have jurisdiction to determine an overpayment in a deficiency case, the Court nonetheless may not order a refund of that overpayment until 120 days after its decision has become final. Sec. 6512(b)(2). And even where the Tax Court does have jurisdiction to determine an overpayment *and* to order a refund of that overpayment, section 6512(b)(4) provides, "The Tax Court shall have no jurisdiction under this subsection to restrain or review any credit or reduction made by the Secretary under section 6402." Consequently, in that 120-day period the IRS retains its discretion under section 6402 to credit or refund the overpayment; and if the IRS allows the determined overpayment by crediting it to another liability (rather than refunding it or applying it as the taxpayer might have preferred), the Tax Court has no jurisdiction to upset the IRS's action.

The foregoing description is intended to show how explicit Congress has been in establishing a remedy for litigating tax refund claims in forums other than the Tax Court and in establishing a circumscribed exception for litigating such claims in a Tax Court deficiency case.

b. *CDP proceedings contrasted*

The instant case is obviously not a refund suit brought in District Court nor in the Court of Federal Claims; and it is not a deficiency case to which section 6512(b) might apply (to limit overpayment jurisdiction in deficiency cases); rather, it is a collection review case brought pursuant to section 6330. It is true, as we noted above, that in determining whether tax is "unpaid", we sometimes do have the responsibility, as in *Freije*, to determine the presence of "available credits".[16] *Freije* involved contentions that the IRS had misapplied payments that, if applied correctly, would have satisfied the determination-year liability that the IRS proposed to collect; and Mr. Weber's analogous contention (that the IRS misapplied his 2006 credit elect) has been dealt with above. Our reasoning in *Freije* might also warrant bringing into consideration in a CDP case other "available credits"—such as a credit carryover prescribed by statute that would affect the tax liability for the determination year,[17] or an overpayment that had been determined in a refund or deficiency suit but that had not yet been refunded or credited, or an overpayment that had been determined by the IRS (e.g., in response to a claim for refund) but that had not yet been refunded or credited.

Mr. Weber, however, asks us not to consider a credit that is already "available" (because it has already been determined) but rather to *make* "available" a credit that is currently *not* available because the IRS has *dis*allowed it. He contends that there is a positive balance in his penalty account and that we could decide this case in his favor as an

---

[16] *See, e.g.*, *Wright v. Commissioner*, 471 Fed. Appx. 21, 23 (2d Cir. 2012) ("the Tax Court erred in declining to consider Wright's final argument, which was that he did not receive a 1994 refund for $960. On remand, the Tax Court should resolve this last issue and determine whether the 1994 refund—if such refund was due to Wright—was sent to him"). In *Wright*, a CDP case involving collection of 1987 and 1989 income tax, the taxpayer pointed to an IRS transcript for his 1994 year that reflected a $960 credit and the allowance of a $960 refund, asserted that he had never received the refund, and contended that it should therefore be applied to satisfy his determination year liability. *See* taxpayer-appellant's reply brief filed with the Court of Appeals for the Second Circuit on June 10, 2011, at 22 n.6 (citing Exhibit A to the Commissioner's motion for summary judgment filed June 17, 2005, in *Wright v. Commissioner*, docket No. 6240–01L). That is, *Wright* involved an alleged existing credit and not a taxpayer's request that the Tax Court adjudicate a refund claim.

[17] For example, section 39 allows the carryback and carryforward of business credits listed in section 38(b); and in 2008 such carrybacks and carryforwards were claimed on lines 6 and 7 of Form 3800, "General Business Credit", and thus could contribute to the total credit claimed on line 53 of Form 1040, "U.S. Individual Income Tax Return".

almost arithmetical matter—but that is not the case: Whether the penalty has really been overcollected is a potentially complex question that may depend not only on the balance in his account (which in fact is still negative) but also on the pendency of refund claims by other responsible persons and on liabilities for interest and additions to tax. *See supra* pp. 358–359. Mr. Weber thus asks us not to allocate an uncontroversial credit but rather to adjudicate a disputed refund claim that is unrelated to the liability the IRS proposes to collect, and this stretches *Freije* past the breaking point.

Unlike section 6512(b) (which gives us overpayment jurisdiction in a deficiency case), section 6330—the statute conferring our CDP jurisdiction—has no provisions conferring and delimiting any overpayment jurisdiction. Mr. Weber's position would require us to conclude that, in enacting the CDP regime in section 6330, Congress intended to implicitly grant us jurisdiction to adjudicate refund claims for unrelated liabilities. This would contradict our prior holding that "Congress did not intend section 6330 to provide for the allowance of tax refunds and credits". *Greene-Thapedi v. Commissioner*, 126 T.C. 1, 12 (2006).

Mr. Weber's position would also require us to conclude that, in conferring this supposed CDP overpayment jurisdiction, Congress determined not to circumscribe that jurisdiction (as it circumscribed overpayment jurisdiction in deficiency cases). That is, this supposed grant of CDP overpayment jurisdiction would apparently include no restriction as in section 6512(b)(4) but rather would include the power, in effect, not only to determine an overpayment but also—critical to the relief Mr. Weber seeks—to direct how it shall be credited. This supposed grant of CDP overpayment jurisdiction would have no apparent full-payment rule, *see supra* note 12, but would in that respect evidently be broader than the refund jurisdiction of the District Courts. Most tax litigation is restricted to a specific taxable period at issue, and in a CDP hearing Appeals "review[s] only a particular collection episode—a given notice of lien or notice of proposed levy." *Tucker v. Commissioner*, 135 T.C. 114, 164 (2010), *aff'd*, 676 F.3d 1129 (D.C. Cir. 2012). By contrast, a CDP hearing with the expanded reach that Mr. Weber proposes would then *not* be confined to consideration of "the taxable period to which

the unpaid tax specified [in the notice of proposed levy] * * * relates", sec. 6330(b)(2); rather, a CDP hearing could become an almost plenary review of the taxpayer's situation vis-a-vis the IRS for all liabilities and for all periods; and a delinquent taxpayer would have the power to halt IRS collection of any given tax simply by filing a refund claim for any other tax, however unrelated it might be to the tax that the IRS proposed to collect. There is nothing in the text or legislative history of section 6330 to suggest that, in establishing the CDP regime, Congress intended to so constrain the collection of revenue.

In addition, there would be several other practical problems and conceptual anomalies generated by the adjudication of such a claim in this CDP proceeding. First, Mr. Weber waived in writing his right to a CDP hearing before IRS Appeals concerning his penalty liability. That would have been the natural occasion to dispute his liability for this penalty; and if this were a CDP hearing concerning the penalty, that "prior opportunity" would deprive both Appeals and this Court of jurisdiction to entertain his challenge to underlying liability. *See* sec. 6330(c)(2)(B). However, in this collection review case concerning his 2008 income tax, his challenge to liability for the section 6672 *penalty* is raised as an issue concerning whether the 2008 *income* tax should be deemed "unpaid", so the congressional intent to offer only one opportunity would be side-stepped, if Mr. Weber's view prevailed.

Second, if collection of Mr. Weber's 2008 income tax must await litigation of his claim of overpaid penalty, then that wait may be substantial. "Responsible person" cases, like other cases involving substantive tax disputes, can be factually and legally complex and can take years to resolve. To properly adjudicate Mr. Weber's claim would require a determination of whether he was, in fact, a "responsible person" who willfully failed to pay over S&G's trust fund taxes, so that the section 6672 penalty was properly assessed; and if so, whether the trust fund taxes of S&G (along with any interest and penalties that may have accrued against the entity and all "responsible persons") have by now been overpaid when taking into consideration payments by him, by other "responsible persons", and/or by S&G. Then, if such an overpayment does exist, a determination must be made whether there are other possible claimants to that overpay-

ment and to what extent those other claimants have claims currently pending or have time left to file such a claim. Thereafter, a determination of each respective claimant's share in such overpayment would also be necessary. Only then would Mr. Weber's share of any such overpayment be known and possibly "available" to apply to his 2008 income tax liability.

Third, if a taxpayer may assert an overpayment of an unrelated liability in a CDP proceeding, Mr. Weber does not say whether the IRS may raise in turn (as it could in a refund suit) an issue not stated in the refund claim as an "offset" to reduce the amount of the overpayment, *see Lewis v. Reynolds*, 284 U.S. 281 (1932), or a counterclaim for an unrelated liability, *see* 28 U.S.C. secs. 1346(c), 1503, 2508. Section 6330 is silent on the point—surprisingly silent, if Congress meant to confer jurisdiction to entertain overpayment claims.

Fourth, where the deadline for filing a refund suit, *see* sec. 6532(a), was looming, and where the taxpayer has been cautious and (like Mr. Weber) has filed not only a CDP case in this Court but also an actual refund suit in one of the courts with refund jurisdiction, the courts are presented with the vexing question of which court should proceed to adjudicate the claim, and which should defer. (Section 7422(e), which applies only when a deficiency case is pending in the Tax Court, and not a CDP case, would not answer the question.) It is true that Mr. Weber has disclaimed any intention to dispute in this Court his underlying liability for the penalty (and has said he argues here only an allegedly excessive collection of the penalty); but this tactical decision on his part does not solve the problems the courts would face in other cases if his view were adopted but his tactic was not imitated. Moreover, his approach involves inevitable difficulties: He proposes to litigate his excessive collection argument here and his non-liability argument in District Court; but these are two aspects of a single cause of action that he thereby purports to split. When one court reached an outcome, whether favorable or unfavorable, its judgment might be res judicata for his entire claim and might cut off the aspect still supposedly pending in the other court.

An overpayment of a section 6672 penalty (or any other liability) that has been determined by the IRS or a court but has not been either refunded or applied to another liability

may be an "available credit" that, under *Freije*, could be taken into account in a CDP hearing to determine whether the tax at issue remains "unpaid" and whether the IRS can proceed with collection. But a mere claim of an overpayment is not an "*available* credit" but is instead a *claim* for a credit; and such a claim need not be resolved before the IRS can proceed with collection of the liability at issue. Mr. Weber's section 6672 penalty liability is distinct from and unrelated to his 2008 income tax liability. His remedy regarding his section 6672 penalty refund claim is to be found in the District Court refund suit he has already commenced.

## *Conclusion*

The IRS's Office of Appeals did not abuse its discretion in determining to proceed with a levy to collect Mr. Weber's unpaid 2008 income tax, notwithstanding his contention that his liability for a section 6672 penalty was overpaid.

> *An appropriate order and decision will be entered.*