T.C. Summary Opinion 2017-61

UNITED STATES TAX COURT

CHARLES EDWARD FAGAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28981-15S L.              Filed August 9, 2017.

Charles Edward Fagan, pro se.

Jeremy D. Cameron, for respondent.

SUMMARY OPINION

GERBER, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. Respondent made the determination to proceed to collect petitioner's 2011 income tax liability by levy. Petitioner seeks review of that determination under section 6330. We consider whether there was an abuse of discretion due to respondent's refusal to treat petitioner's 2011 income tax liability as satisfied by means of payments that respondent had misapplied.

## Background

Petitioner was a resident of Florida at the time his petition was filed in this case. He was a practicing attorney in Buffalo, New York, until his retirement, when he moved to Florida. This collection case emanated from a March 16, 2015, notice to petitioner that respondent intended to proceed with collection of a 2011 income tax liability of $2,346.46. Petitioner sought a hearing alleging, essentially, that previous payments were misapplied and should have been applied to pay his 2011 tax liability. The March 16, 2015, notice was not petitioner's first encounter with respondent. It was the culmination of a long and protracted history of collection and tax issues spanning more than 15 years.

During the mid-1990s petitioner and his wife's divorce resulted in personal difficulties, including tax problems. Petitioner also encountered problems with

his accountants which exacerbated his tax problems, all beginning around 1996. Between 2001 and through 2005, petitioner attempted to file all delinquent returns and to pay back taxes. His goal was to retire at the end of 2008 without tax debt.

During 2005 petitioner was contacted by Kenneth Heidle, a collection officer in respondent's Buffalo office, regarding withholding tax returns going back to 1996 and running through 2001. Beginning in 2006 petitioner engaged in a series of about 20 meetings with Mr. Heidle. The meetings resulted in the resolution of numerous issues for various taxable periods.

The unresolved tax periods resulted in a collection due process case that was scheduled for a hearing before this Court sitting in Buffalo, New York, during October 2008. Petitioner met with respondent's trial attorney in an effort to settle issues involving the remaining tax liabilities, including income tax for 1996, 1997, and 1998, and withholding tax for the fourth quarter of 2007 and first quarter of 2008. A settlement was reached and memorialized in the parties' notes and agreements. The documentation reflects that the income tax liabilities, including penalties for 1996, 1997, and 1998, totaled $24,183.93 and that the two withholding liabilities totaled $6,160.01, or total tax liabilities of $30,343.94. Respondent's counsel conceded $4,947.97 in income tax penalties for 1996, 1997,

and 1998, resulting in a net settlement of $25,395.97 which petitioner was to pay off in 12 monthly payments of $2,125.

In the decision entered by this Court, the parties' stipulation included mention of respondent's concession of the penalties and that the case had been settled by the parties' execution of an installment agreement. With respect to the withholding tax liabilities, however, there remained a question. Despite the fact that the parties' notes and the agreed settlement included the $6,160.01 withholding tax liabilities, petitioner explained to Mr. Heidle that the 2007 employment tax liability had been paid in full. The fourth quarter 2007 employment tax liability constituted $3,139.35 of the $6,160.01 in employment tax liabilities. Petitioner supplied Mr. Heidle, during October 2008, with documents showing a Federal tax lien, dated April, 22, 2008, for fourth quarter 2007 withholding tax of $4,955.77 and three checks, all dated in June of 2008, that reflected that respondent had been paid in full and the lien had been released. After supplying proof of payment, petitioner asked Mr. Heidle why the $3,139.35, fourth quarter 2007 liability continued to be part of the installment agreement; and Mr. Heidle advised that payments petitioner made for 2007 would be available to him after the final payment on the installment agreement.

Petitioner complied with the installment agreement, making all agreed payments during an approximately one-year period. During the intervening years numerous transactions and interactions occurred between petitioner and respondent. When petitioner filed his 2011 income tax return showing a $2,346.46 tax liability, he attempted to convince respondent that the 2011 tax liability was satisfied by $2,900 that was a result of errors and misapplications resulting from the ongoing collection issues between the parties. During 2013 petitioner received a notice that he owed additional interest and penalties for the very same years that had been resolved in the settlement and covered by the installment agreement. Petitioner pursued an administrative appeal and convinced the Internal Revenue Service (Service) that those matters had been resolved. Ultimately, the Service agreed.

While petitioner was convincing respondent that liabilities had been duplicated, the Service seized $8,700 of petitioner's funds and applied them toward liabilities that were already satisfied but had mysteriously reappeared on respondent's records. Ultimately, the Service sent petitioner an $8,700 check. Petitioner also overpaid $1,758 on a related matter and asked that it be refunded or returned to him. The explanation he received as to why he did not receive the $1,758 is that he had outstanding withholding tax liabilities. That was the first

time since the settlement and the installment agreement that petitioner heard that any withholding tax liabilities remained outstanding or in dispute. At this time petitioner was no longer practicing law and no longer generating employment tax liabilities.

Between 2008 and 2013 the Service sent petitioner bills for taxes, penalties, and interest (involving around $17,000 to $18,000) for the same tax periods which petitioner had paid off as part of his settlement and installment agreement. In each instance, petitioner convinced the Service that these claims had been resolved in the settlement and paid as part of the installment agreement.

Petitioner also discovered in respondent's records that one of the $2,125 installment payments that the parties agreed would pay off income tax for 1996, 1997, and 1998 was applied to withholding tax for the fourth quarter of 2007. Respondent also applied another $1,024.75 from the installment agreement to the fourth quarter 2007 employment tax, which petitioner had shown that he had paid in full. The net effect of these misapplications and confusion is that $2,900 remained available to satisfy the outstanding 2011 income tax liability, for which petitioner admits he is liable.

## Discussion

The record in this case reveals a convoluted and complex relationship between respondent's collection offices and petitioner. The record of these interactions consists of several hundred pages of correspondence, transcripts, reports, and notes of the parties. Although the parties had settled one collection due process case and entered into an installment agreement with which petitioner complied, the Service was not able to adjust its records to properly reflect the resolution; and it continued to issue notices and seize property in satisfaction of tax liabilities that had been settled and satisfied. The interaction and confusion began in 2006 and has continued through the instant collection due process case.

The only position advanced by petitioner is that this complex series of transactions between him and the Government results in no collectible outstanding 2011 income tax liability. The main thrust of respondent's argument is that the Service has absolute authority to apply overpayments in any manner it chooses. Petitioner counters that his is not a question of the application of an overpayment but involves the misapplication of payments and a duplication of paid tax liabilities resulting in a $2,900 difference from respondent's records that should be used to satisfy the 2011 income tax liability.

Petitioner does not question the amount of the underlying income tax liability for 2011, and we do not address the merits of that liability. The question we consider is whether the payments petitioner made were misapplied, resulting in no tax due for 2011. This question does not involve a challenge to the merits of the underlying liability and is properly before the Court to decide whether respondent's decision to proceed with collection is an abuse of discretion. See Weber v. Commissioner, 138 T.C. 348, 355 (2012); see also Goza v. Commissioner, 114 T.C. 176, 182 (2000).

Respondent contends that section 6402 provides the Commissioner with authority to apply overpayment to any outstanding tax liability. Section 6402, in pertinent part provides:

> SEC. 6402(a). General Rule.--In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment * * *.

However, petitioner is not claiming an overpayment or credit. He has shown that his payments, both under the installment agreement and otherwise, satisfy all outstanding liabilities against him, including the 2011 income tax which respondent seeks to collect.

Respondent's position that this case involves an overpayment is incorrect. There were payments that were made in satisfaction of a series of outstanding tax liabilities. There were misapplications of payments that petitioner and respondent had agreed were to be applied against specific liabilities. Such payments are not "overpayments" which are covered by section 6402 as they were payments that respondent agreed to apply against specific tax liabilities. One of those tax liabilities had been fully satisfied. In addition, respondent applied one of petitioner's refunds to accounts that had been satisfied. These errors and misapplications totaled $2,900, an amount sufficient to satisfy the 2011 income tax liability respondent seeks to collect.

Accordingly, the record supports petitioner's position that respondent misapplied $2,900, an amount which exceeds the outstanding balance of the 2011 liability for which collection is being pursued. We agree with petitioner that his payments cover the amount due for 2011 and that it was an abuse of discretion for respondent to pursue collection.

To reflect the foregoing,

<u>Decision will be entered for petitioner</u>.