T.C. Memo. 2012-263

UNITED STATES TAX COURT

TERRY L. WORTHAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11003-10.　　　　　　　　　　Filed September 12, 2012.

<u>William T. Holman</u> and <u>David M. Von Hartitzsch</u>, for petitioner.

<u>William F. Castor</u>, for respondent.

MEMORANDUM OPINION

　　MARVEL, <u>Judge</u>:  Petitioner is seeking an award of reasonable

administrative costs pursuant to section 7430(f)(2) and Rule 231.[1]

---

　　[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the relevant periods, and all Rule references are

(continued...)

## [*2] Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts is incorporated herein by this reference. Petitioner resided in Oklahoma when he filed his petition.

During the years at issue petitioner was a managing member of Innovative Machine Tool Solutions, LLC (IMTS). IMTS began doing business in 2004. At some point in 2007 IMTS closed and ceased paying wages.

During January and February 2008 petitioner, on behalf of IMTS, untimely filed Forms 941, Employer's Quarterly Federal Tax Return, for the quarters ending June 30, 2004, through December 31, 2007.[2] With the returns, petitioner voluntarily submitted, and respondent accepted, tax payments for those quarters via check by hand delivery to the Internal Revenue Service (IRS) office in Tulsa, Oklahoma. In letters accompanying the checks, petitioner included the following request: "Pursuant to the authority granted by Revenue Procedure 2002-26, please

---

[1](...continued)
to the Tax Court Rules of Practice and Procedure. Monetary amounts have been rounded to the nearest dollar.

[2]During January and February 2008, petitioner, on behalf of IMTS, also untimely filed Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 2004-07. The record contains no evidence that petitioner submitted payments with the Forms 940.

**[*3]** apply the payment to federal income taxes, social security taxes and Medicare taxes withheld from employees' wages (i.e., the trust fund taxes)."[3]

Despite petitioner's request that the IRS apply the payments to the trust fund tax[4] liabilities, the IRS, in its best interests, applied the payments to the non-trust-fund portion of IMTS' liabilities. Respondent subsequently determined that IMTS had unpaid employment taxes (i.e., unpaid withholding and FICA tax liabilities with respect to its Forms 941 for the quarters ending June 30, 2004, through December 31, 2007, and unpaid FUTA tax liabilities with respect to its Forms 940 for 2005-07), and in May 2008 respondent sent IMTS notice and demand for payment with respect to the unpaid employment taxes. In response, IMTS'

---

[3]Rev. Proc. 2002-26, sec. 3, 2002-1 C.B. 746, 746, provides that if the IRS has assessed additional taxes, penalties, and interest "at the time the taxpayer voluntarily tenders a partial payment that is accepted by the Service and the taxpayer provides specific written directions as to the application of the payment, the Service will apply the payment in accordance with those directions." See also Wood v. United States, 808 F.2d 411, 416 (5th Cir. 1987); Cooley v. Commissioner, T.C. Memo. 2012-164, slip op. at 7 n.1.

[4]Secs. 3102 and 3402 require an employer to withhold from an employee's wages and pay over to the IRS both income tax and the employee's share of Social Security and Medicare tax (i.e., Federal Insurance Contributions Act (FICA) tax, secs. 3101-3128). See Weber v. Commissioner, 138 T.C. __, __ (slip op. at 16) (May 7, 2012). Sec. 7501(a) provides that "the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." We use the term "trust fund tax" to refer to income and FICA taxes IMTS was required to withhold from employee wages and hold in trust for the United States. See id.; Mason v. Commissioner, 132 T.C. 301, 321 (2009).

**[*4]** representative, William T. Holman, mailed respondent letters and accompanying enclosures, including copies of IMTS' returns and tax payment checks, as well as petitioner's letters designating the checks as payments for trust fund taxes.

On November 21, 2008, Revenue Officer Hal Spannagel contacted Mr. Holman by telephone. During the conversation Mr. Holman informed Revenue Officer Spannagel that: (1) petitioner had filed returns for the periods at issue and made payments designated as trust fund only tax payments, pursuant to IRS authorities;[5] (2) IMTS had ceased to do business; and (3) IMTS' assets had been used to pay its outstanding liabilities to the extent possible. Mr. Holman requested a copy of IMTS' account transcripts for the periods at issue, and Revenue Officer Spannagel agreed to provide the transcripts.

Subsequently, on December 9, 2008, respondent mailed Notices of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 to IMTS. Respondent advised IMTS that he had filed notices of Federal tax lien (NFTLs) with respect to IMTS' unpaid employment taxes, then totaling $130,483.

---

[5]The parties did not explain or stipulate the meaning of the word "authorities". The parties' reference to authorities appears to be a reference to Rev. Proc. 2002-26, <u>supra</u>.

**[*5]** On December 15, 2008, pursuant to a request of Revenue Officer Spannagel, Mr. Holman mailed him a Form 433-B, Collection Information Statement for Businesses, on behalf of IMTS.

On January 7, 2009, petitioner, on behalf of IMTS, timely submitted to respondent a Form 12153, Request for a Collection Due Process or Equivalent Hearing. In the request, petitioner stated that the amounts of taxes and penalties assessed were greater than the amounts owed by IMTS and that IMTS had paid part of its tax liability. Petitioner attached a table listing IMTS' payments, including the payment date, tax type, tax period, and amount paid. The table showed that IMTS made payments totaling $117,075 and that all of IMTS' payments were made to satisfy its unpaid Form 941 tax liabilities.

On February 2, 2009, Revenue Officer Jay Bryce called Mr. Holman. During the telephone call Revenue Officer Bryce informed Mr. Holman that he would be handling the IMTS matter. Mr. Holman informed Revenue Officer Bryce that IMTS had filed returns and made designated trust fund only payments, that IMTS had ceased doing business and used its assets to pay its outstanding liabilities to the extent possible, and that Mr. Holman had submitted a completed Form 433-B on behalf of IMTS.

**[\*6]**  Mr. Holman also informed Revenue Officer Bryce that he had requested copies of IMTS' account transcripts from Revenue Officer Spannagel but that he had never received them.  Revenue Officer Bryce subsequently transmitted to Mr. Holman copies of IMTS' account transcripts for the periods at issue.  At that time Mr. Holman confirmed that the IRS had not applied the payments to IMTS' trust fund tax liabilities as petitioner had requested.

IMTS' request for a section 6320/6330 hearing subsequently was assigned to Settlement Officer Jeffrey L. Silverhorn.  On March 13, 2009, Settlement Officer Silverhorn held a telephone conference with Mr. Holman.  During the telephone conference Mr. Holman stated that IMTS had submitted the Form 12153 to dispute the IRS' application of IMTS' payments.  Mr. Holman informed Settlement Officer Silverhorn that:  (1) Settlement Officer Spannagel had indicated that IMTS' only recourse would be to submit the Form 12153 to dispute the IRS' application of the payments; (2) petitioner, on behalf of IMTS, had specifically designated that the payments be applied to the trust fund portion of IMTS' tax liabilities; (3) the IRS misapplied the payments; and (4) pursuant to Internal Revenue Manual pt. 8.25.2.6 (Oct. 19, 2007), if a taxpayer notifies the IRS of a misapplication of payments with respect to a trust fund recovery penalty case, an Appeals technical employee should prepare an Appeals referral inquiry

**[*7]** (ARI) and submit the ARI to the Technical Services Advisory Group with supporting documentation to correct the misapplication. Mr. Holman agreed to send Settlement Officer Silverhorn documentation of IMTS' payments and copies of the relevant authorities. Mr. Holman requested a face-to-face hearing to discuss the matter in the event that Settlement Officer Silverhorn did not direct the IRS to correct the misapplication of the payments. Settlement Officer Silverhorn agreed to schedule a hearing in May 2009.

On March 23, 2009, Settlement Officer Silverhorn mailed to IMTS a letter scheduling a hearing for May 6, 2009. In the letter Settlement Officer Silverhorn requested verification that IMTS had paid the trust fund portion of its employment tax liabilities. On March 30, 2009, Mr. Holman mailed to Settlement Officer Silverhorn a letter and accompanying enclosures, including a spreadsheet of payments made by IMTS and copies of related checks.

On or about April 7, 8, 9, and 16, 2009, Mr. Holman placed calls to, and left messages for, Settlement Officer Silverhorn. In the messages Mr. Holman inquired as to whether Settlement Officer Silverhorn had received the documentation from IMTS and whether Settlement Officer Silverhorn needed any further information. On April 16, 2009, Settlement Officer Silverhorn returned Mr. Holman's calls and left a message stating that he was considering the

[*8] information and he would discuss the issue with Mr. Holman at the hearing scheduled for May 6, 2009. On that same date Mr. Holman mailed to Settlement Officer Silverhorn a letter stating that he had tried repeatedly to contact Settlement Officer Silverhorn to confirm his receipt of the documentation and inquiring as to whether the information was sufficient to resolve the matter. On May 6, 2009, Mr. Holman hand-carried to Settlement Officer Silverhorn a letter supporting petitioner's designation of IMTS' payments to the trust fund tax portion of the liabilities.

On May 11, 2009, Settlement Officer Silverhorn sent a request for advice to the IRS Office of Chief Counsel. Settlement Officer Silverhorn subsequently informed Mr. Holman that he had made the request for advice. Mr. Holman requested to participate in any discussion that occurred with the Office of Chief Counsel regarding the payment application matter and Settlement Officer Silverhorn agreed to permit him to participate.

On June 18, 2009, Settlement Officer Silverhorn received an opinion from the Office of Chief Counsel. In the opinion the Office of Chief Counsel stated that it concurred with IMTS' position that the payments should be applied to the trust fund portion of the employment tax liabilities.

**[*9]** On June 19, 2009, Settlement Officer Silverhorn mailed to IMTS a letter advising that the Appeals Office had determined that the IRS should grant IMTS' request to apply "certain payments" to the trust fund tax liabilities. In the letter Settlement Officer Silverhorn requested that IMTS sign an enclosed Form 12257, Summary Notice of Determination, Waiver of Right to Judicial Review of a Collection Due Process Determination, and Waiver of Suspension of Levy Action. Pursuant to the Form 12257, the determination of the Appeals office was "[t]o apply the various payments made to the trust fund portions of the outstanding liabilities as designated by the taxpayer at the time the payments were remitted to the IRS."

On June 22, 2009, Mr. Holman faxed to Settlement Officer Silverhorn a letter acknowledging receipt of his letter dated June 19, 2009. In the letter Mr. Holman requested that Settlement Officer Silverhorn provide clarification as to what constituted "certain payments", as identified in Settlement Officer Silverhorn's letter, and "various payments", as identified in the Form 12257.

On June 25, 2009, Settlement Officer Silverhorn concluded that rather than attempt to obtain petitioner's signature on the Form 12257, which he felt did not require any clarification, it was appropriate to reapply the payments to IMTS' trust fund tax liabilities and issue a notice of determination. Settlement Officer

[*10] Silverhorn contacted the IRS Compliance Division to assist him with reapplying IMTS' payments. Subsequently, on June 26, 2009, Settlement Officer Silverhorn completed the closing documents and sent them to his manager for approval.

On July 15, 2009, Settlement Officer Silverhorn's manager, Gina Smith, received a telephone message from Mr. Holman. In the message, Mr. Holman stated that he had been unsuccessful in contacting Settlement Officer Silverhorn to obtain clarification regarding the misapplied payments and that he was willing to advise petitioner to sign the Form 12257, provided that the Appeals Office issued a revised letter stating that all of petitioner's payments would be applied properly. Settlement Officer Silverhorn did not contact Mr. Holman in response to his faxed letter and message.

Subsequently, on July 29, 2009, Settlement Officer Silverhorn reviewed the relevant account transcripts for IMTS and ascertained that each payment originally designated a "remittance with return" had been reapplied and designated a "subsequent payment". Settlement Officer Silverhorn also ascertained that each payment had been applied as a payment of IMTS' trust fund taxes. He determined that all actions to reallocate the payments to the trust fund tax liabilities had been completed, and, accordingly, there was no need to conduct another hearing or to

[*11] secure a signed Form 12257.  Settlement Officer Silverhorn did not contact Mr. Holman regarding his determination.

On August 18, 2009, respondent's Appeals Office issued to IMTS a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. In the notice of determination the Appeals Office determined that respondent should apply the "various payments" that IMTS made with each Form 941 to the trust fund portion of its tax liabilities.  The Appeals Office sustained respondent's filing of the NFTLs because IMTS had neither satisfied the entire amount of its unpaid employment tax liabilities nor qualified for withdrawal of the NFTLs under section 6323(j).

Subsequently, on September 17, 2009, Mr. Holman, on behalf of petitioner, mailed a letter to Settlement Officer Silverhorn.  In the letter petitioner requested reimbursement of administrative costs, consisting of $11,081 in attorney's fees, that petitioner purportedly incurred in connection with his proceedings with the IRS. Respondent did not respond to the request.  Accordingly, on May 13, 2010, petitioner filed a petition in this Court seeking an award of reasonable administrative costs.[6]

---

[6]Sec. 301.7430-2(c)(6), Proced. & Admin. Regs., provides that the IRS may notify the taxpayer of its decision to grant or deny an award for reasonable

(continued...)

**[\*12]** <u>Discussion</u>

I.    <u>Introduction</u>

Section 7430(a) allows a taxpayer to recover reasonable administrative costs incurred in an administrative proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty. Reasonable administrative costs are the reasonable and necessary costs incurred by the taxpayer in connection with the administrative proceedings, including administrative fees imposed by the Commissioner, reasonable fees paid or incurred to retain the services of a representative who is licensed to practice before the IRS, reasonable expenses of expert witnesses, and reasonable costs for any study, analysis, or report that is necessary to the taxpayer's case. Sec. 7430(c)(2); secs. 301.7430-2(b)(ii) and (iii), 301.7430-4(b)(1), Proced. & Admin. Regs. Recoverable costs are limited to costs incurred on or after the administrative proceeding date. <u>See</u> sec. 301.7430-3(c), Proced. & Admin. Regs.; <u>see also</u> <u>Gustafson v. Commissioner</u>, 97 T.C. 85, 87 (1991). To recover administrative costs under section 7430(a), the taxpayer must satisfy each of the

---

[6](...continued)
administrative costs. If the IRS does not respond to the taxpayer's request within six months after the taxpayer filed the request, the taxpayer may consider the IRS' failure to respond as a decision denying an award for reasonable administrative costs. <u>See</u> <u>id.</u>

[*13] following requirements: (1) the taxpayer must not have unreasonably protracted the administrative proceedings, see sec. 7430(b)(3), and (2) the taxpayer must have been the "prevailing party" in the administrative proceedings, see sec. 7430(c)(4)(A).

The parties disagree with respect to the following issues: (1) whether petitioner incurred the requested costs in an administrative proceeding; (2) whether petitioner incurred the requested costs on or after the administrative proceeding date; and (3) whether petitioner is the prevailing party for purposes of section 7430. Because we hold that petitioner incurred the requested costs in a collection proceeding and that he incurred all of the costs before the administrative proceeding date, we find that petitioner is barred by section 301.7430-3(a), Proced. & Admin. Regs., from recovering these costs under section 7430. Accordingly, we need not address the remaining issue.

II.    Whether Petitioner Is Entitled To Recover Administrative Costs Claimed

Section 7430(c)(5) defines the term "administrative proceeding" as "any procedure or other action before the" IRS. Pursuant to section 301.7430-3(a), Proced. & Admin. Regs., an administrative proceeding does not include "[p]roceedings in connection with collection actions (as defined in paragraph (b) of this section)". A collection action includes any action that the IRS takes to

**[\*14]** collect a tax or any action a taxpayer takes in response to the IRS' act or failure to act in connection with collection of a tax.  See sec. 301.7430-3(b), Proced. & Admin. Regs.  Specifically, collection actions include actions taken by the IRS to collect a tax through the filing of a notice of lien with respect to a taxpayer and actions the taxpayer takes in response to the IRS' filing of a notice of lien.  See id. ("[A] collection action * * * includes any action taken by the Internal Revenue Service under Chapter 64 of Subtitle F to collect a tax."); see also secs. 6301-6344; Dalton v. Commissioner, T.C. Memo. 2011-136, slip op. at 18 (taxpayers "are not permitted to recover costs incurred in connection with the collection due process hearing"), rev'd on other grounds, 682 F.3d 149 (1st Cir. 2012); Acme Music Co. v. IRS (In re Acme Music Co., Inc.), 208 B.R. 838, 844 (Bankr. W.D. Pa. 1997) (holding that "[a]ctions of levy * * * under I.R.C. section 6331 constitute collection actions" for purposes of section 7430).

To illustrate the difference between an administrative proceeding and a collection action, section 301.7430-3(d), Example (6), Proced. & Admin. Regs., provides as follows:

> Taxpayer E files an individual income tax return showing a balance due.  No payment is made with the return and the Internal Revenue Service assesses the amount shown on the return.  The Internal Revenue Service issues a notice and demand for tax pursuant to section 6303.  E contacts the Collection Division (Collection)

[*15] regarding E's outstanding liability. No agreement is reached with respect to the timing of E's payment, and Collection issues a notice of intent to levy pursuant to section 6331(d). Prior to the levy, E enters into an installment agreement with Collection. The costs that E incurred in connection with the notice and demand were not incurred in an administrative proceeding, but rather in a collection action. Accordingly, E may not recover those costs as reasonable administrative costs under section 7430 and the regulations thereunder.

We interpret this example to mean that any costs a taxpayer incurs in connection with a notice and demand for the payment of tax are costs incurred in a collection action. See id. Accordingly, administrative costs incurred in connection with a notice and demand for the payment of tax or with a notice of Federal tax lien are not recoverable under section 7430. See id.; see also Dalton v. Commissioner, slip op. at 18; H.R. Conf. Rept. No. 100-1104, at 226 (1988), 1988-3 C.B. 473, 716 ("Thus, with respect to a collection action, only reasonable litigation costs are recoverable under * * * [section 7430].").

Respondent contends that petitioner incurred the requested administrative costs in connection with a collection action and not in connection with an administrative proceeding. Petitioner contends that respondent should not be permitted to characterize the proceeding as a collection action because he attempted to induce respondent to apply the designated tax payments properly, respondent failed to act to correct the misapplication, and consequently,

[*16] respondent forced petitioner to seek correction of the misapplication by participating in a proceeding under section 6330.

The record shows petitioner contacted respondent's Collection Division only after he received notice and demand for payment. The record also shows that petitioner was unable to resolve his dispute with the Collection Division timely and that, believing that he lacked any other available process to dispute the application of the tax payments, petitioner requested a section 6320/6330 hearing after respondent filed NFTLs with respect to the unpaid employment taxes. Because petitioner incurred the costs after respondent had issued notice and demand for payment and had filed NFTLs, the costs were costs incurred in a collection action, not an administrative proceeding. See sec. 301.7430-3(d), Example (6), Proced. & Admin. Regs.; see also Dalton v. Commissioner, slip op. at 17-18.

Petitioner pursued an administrative remedy only after respondent had initiated a collection action with respect to the trust fund taxes by sending petitioner a notice and demand for payment and filing NFTLs. While petitioner argues that respondent forced him to pursue a remedy through a collection action, we note that respondent was not required to postpone the filing of the lien notices while petitioner's administrative appeal, conducted by Revenue Officer

**[*17]** Spannagel, was pending.  See, e.g., <u>Don Johnson Motors, Inc. v. United States</u>, 453 Fed. Appx. 526, 528 (5th Cir. 2011).  Accordingly, we find that petitioner may not recover the requested administrative costs because the costs were incurred in connection with a collection action and not in connection with an administrative proceeding.

Alternatively, we note that petitioner is entitled to recover administrative costs incurred only on or after the administrative proceeding date.  <u>See</u> secs. 301.7430-2(b)(iii), 301.7430-3(c), Proced. & Admin. Regs.; <u>see also</u> <u>Gustafson v. Commissioner</u>, 97 T.C. at 87.  A taxpayer may only recover those costs incurred on or after the earlier of "(i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals; (ii) the date of the notice of deficiency; or (iii) the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent."  Sec. 7430(c)(2)(B); <u>see also</u> sec. 301.7430-3(c)(1), Proced. & Admin. Regs.[7]  Accordingly, the

_____

[7]As part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. No. 105-206, sec. 3101(b), 112 Stat. at 728, Congress amended sec. 7430(c)(2) to provide that taxpayers also could recover costs incurred on or after the date of the first letter of proposed deficiency.  <u>See also</u> sec. 7430(c)(2)(B).  This amendment was made effective for costs incurred more than 180 days after July 22, 1998, the date of enactment of this act.  RRA 1998 sec.

(continued...)

[*18] administrative proceeding date with respect to petitioner's claim was August 18, 2009, the date the Appeals Office issued the notice of determination to petitioner.

Petitioner is seeking to recover administrative costs incurred before the Appeals Office's issuance of the notice of determination on August 18, 2009. Petitioner is not entitled to recover the requested administrative costs because he incurred those costs before the administrative proceeding date.

On the basis of the record, we conclude that petitioner may not recover the requested administrative costs because he incurred those costs in connection with a collection action and not in connection with an administrative proceeding and because he incurred those costs before the administrative proceeding date. Because of our holding, we need not decide whether petitioner was the prevailing party.

III. Conclusion

While we are sympathetic to the difficulties petitioner faced in inducing respondent to apply petitioner's tax payments properly, petitioner has not satisfied

---

[7](...continued)
3101(g), 112 Stat. at 729. Sec. 301.7430-3(c)(1), Proced. & Admin. Regs., has not been updated to reflect this change.

**[\*19]** the requirements of section 7430; and, accordingly, we find that petitioner is not entitled to an award of the requested costs.

We have considered the remaining arguments of both parties for results contrary to those expressed herein, and to the extent not discussed above, we conclude such arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.