155 T.C. No. 2

UNITED STATES TAX COURT

WHISTLEBLOWER 21276-13W, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

WHISTLEBLOWER 21277-13W, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21276-13W, 21277-13W.　　　Filed August 26, 2020.

Ps' claims for whistleblower awards have been the subject of two prior Opinions. Whistleblower 21276-13W v. Commissioner, 144 T.C. 290 (2015), supplemented by Whistleblower 21276-13W v. Commissioner, 147 T.C. 121 (2016).

After the Court issued its first Opinion, Ps and R entered into a partial settlement that provided for immediate payment with respect to portions of the awards due to Ps and left for judicial resolution a single issue on which the parties could not agree. The partial settlement, which was referred to (but not made part of the record) in the prior proceedings, provided that any further payment "will be reduced by the sequester reduction percentage in effect at the time of payment."

The Court's second Opinion sided with Ps on the remaining unagreed issue. The Court then entered two decisions (the "Decisions") setting forth the dollar amounts of Ps' awards calculated based on inputs stipulated by the parties. The Decisions reflected the gross amounts of the awards, including the awards that R had paid to Ps after the issuance of the first Opinion pursuant to the partial settlement.

R filed an appeal challenging the holding of the second Opinion, but eventually the appeal was dismissed based on the parties' joint stipulation for dismissal. Thereafter, R paid the remaining awards to Ps, but reduced the payments to take into account the sequester reductions contemplated by the parties' partial settlement as well as withholding taxes.

More than eight months after the remaining payments were made and more than seven months after the Decisions became final, Ps moved the Court to enforce the Decisions and to require R to pay the amounts set forth in the Decisions without the sequester reductions.

Held: The Court had jurisdiction to enter the Decisions because a remand to the IRS Whistleblower Office for further proceedings would have been futile as only one disposition was possible as a matter of law on the issue before the Court.

Held, further, as a court of record, the Court has jurisdiction to enforce the Decisions under longstanding Supreme Court precedent.

Held, further, Ps are not entitled to the relief they request, and the motions will be denied because they ignore the terms of the partial settlement and misinterpret the Decisions.

Dean A. Zerbe, for petitioners.

Richard L. Hatfield, for respondent.

## OPINION

TORO, <u>Judge</u>:  These cases are before us on the whistleblowers' motions (the "Motions") to enforce our previously entered decisions.  Those decisions set forth the dollar amounts of the awards calculated for Whistleblower 21276-13W and Whistleblower 21277-13W, pursuant to our August 3, 2016, Opinion. <u>Whistleblower 21276-13W v. Commissioner</u>, 147 T.C. 121, 140 (2016), <u>supplementing</u> 144 T.C. 290 (2015).  The whistleblowers ask us to require the Commissioner to pay the amounts set forth in those decisions, rather than smaller amounts diminished by "sequester reductions."  The Commissioner replies that he has paid in full the awards to which the whistleblowers are entitled:  the amounts specified in the decisions less the sequester reductions to which the parties agreed. For the reasons that follow, we will deny the Motions.

### Background

Our two previous Opinions in these cases describe more fully the relevant factual and legal background that gave rise to the present dispute, and we will not repeat that discussion here.  Our focus here is on the facts relevant to deciding the Motions.

In our first Opinion, issued in June 2015, we were asked to consider whether the whistleblowers, who had not approached the Whistleblower Office until after the Government had collected approximately $74 million from a targeted business pursuant to a plea agreement, but who asserted that they had contributed to the Government's recovery, could be eligible for a whistleblower award. We held that they could be and instructed the Commissioner to consider the merits of their claims. Whistleblower 21276-13W v. Commissioner, 144 T.C. at 300, 306. After we issued that Opinion, the Court "issued an order requiring the parties to attempt to resolve their differences and to keep the Court informed of their progress." Whistleblower 21276-13W v. Commissioner, 147 T.C. at 122. Discussions followed, and the parties reached a partial settlement in November 2015. There they agreed that the whistleblowers were eligible for a total award of 24% of collected proceeds, but they could not agree whether certain amounts were "collected proceeds" for purposes of determining the amount of the award. The parties also agreed that any award would be reduced by a sequester reduction percentage.[1]

---

[1]The Budget Control Act of 2011, as amended by the Taxpayer Relief Act of 2012, provides for the enforcement of Federal budgetary limits through sequestration of discretionary spending. See 2 U.S.C. secs. 900-907 (2018). We recently concluded that the sequestration provisions apply to whistleblower

(continued...)

The partial settlement stated, in relevant part:

1.      In partial settlement of Tax Court Docket No. 21276-13W et al., petitioner 21276-13W, petitioner 21277-13W and the Internal Revenue Service (IRS) (respondent) agree as follows:

2.      Pursuant to this settlement agreement, the IRS shall pay petitioners a sum of $4,800,000, less a 6.8% sequester reduction of $326,400, for a total of $4,474,000.[2]  This sum represents 24% of the $20,000,001 paid by * * * [targeted business] to the IRS as restitution pursuant to its guilty plea * * * which the parties agree constitutes collected proceeds within the meaning of 26 U.S.C. § 7623(b) in this matter. * * *

     *     *     *     *     *     *     *

4.      The parties do not agree on whether or not the remaining $54,131,693.42 collected by the government from * * * [targeted business] pursuant to the plea constitutes collected proceeds within the meaning * * * [of] 26 U.S.C. § 7623(b), and will continue to litigate this issue.  If any portion of the remaining $54,131,693.42, is ultimately determined to be collected proceeds through the judicial process, respondent shall pay petitioners a further sum representing

---

[1](...continued)
awards.  See Lewis v. Commissioner, 154 T.C. ___, ___ (slip op. at 27-29) (Apr. 8, 2020).

[2]The difference between $4,800,000 and $326,400 is $4,473,600, not $4,474,000, as stated in the agreement.  When the Commissioner paid the whistleblowers pursuant to this clause of the agreement, he actually paid them $4,473,600.  The Commissioner paid that agreed amount in December 2015, shortly after the partial settlement was signed, and the amount we later ordered in our January 2017 decisions included the amount already paid in December 2015.

24% of the amount of those collected proceeds. <u>Any such further payment will be reduced by the sequester reduction percentage in effect at the time of payment</u>.
        [Emphasis added.]

The parties did not enter this partial settlement into the record until the whistleblowers filed the Motions. Instead, they "informed the Court that: (1) they agree that petitioners are eligible for an award; and (2) the award is to be 24% of the collected proceeds, i.e., proceeds that are eligible for an award; but (3) they could not reach agreement as to the amount of the collected proceeds." <u>Whistleblower 21276-13W v. Commissioner</u>, 147 T.C. at 122. Subsequent submissions to the Court referred to the settlement without attaching the parties' agreement.

On August 3, 2016, we issued our second Opinion, holding that the disputed $54 million should have been included in collected proceeds for purposes of an award under section 7623(b).[3] <u>Whistleblower 21276-13W v. Commissioner</u>, 147 T.C. at 138-140. We concluded our Opinion by calculating the amounts of the whistleblowers' awards and treating as collected proceeds the entire $74 million stipulated by the parties.

_____

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code (the "Code") in effect at all relevant times.

We entered a decision in docket No. 21276-13W on January 27, 2017, which stated:

> On August 3, 2016, the Court rendered an Opinion (147 T.C. No. 4) with respect to petitioners' claim for a whistleblower award under I.R.C. sec. 7623(b). As part of that Opinion, the Court calculated that the two petitioners were entitled to a combined whistleblower award of $17,791,607.[4] Pursuant to that determination, it is
>
> ORDERED and DECIDED that Whistleblower 21276-13W is entitled to a whistleblower award of $8,895,803.50.

We entered an equivalent decision in docket No. 21277-13W on the same day, ordering and deciding "that Whistleblower 21277-13W is entitled to a whistleblower award of $8,895,803.50." (For convenience, we refer to the two decisions as the "January 2017 Decisions.")

The Commissioner appealed the January 2017 Decisions, but, on March 29, 2018, the U.S. Court of Appeals for the District of Columbia Circuit dismissed the appeal pursuant to the parties' joint stipulation for dismissal.

On May 14, 2018, the Commissioner paid the whistleblowers a combined $9,539,391.23[5] (in addition to the $4,473,600 previously paid). To calculate this

---

[4]The $17,791,607 consisted of 24% of the agreed collected proceeds ($20,000,001) and 24% of the additional collected proceeds ($54,131,693).

[5]The amounts reflected in the text are drawn from Respondent's Response

(continued...)

payment, the Commissioner multiplied the agreed amount of criminal fines and civil forfeitures ($54,131,693.42) by the agreed award percentage (24%), yielding $12,991,606.42. As provided in the partial settlement, the Commissioner reduced the award by 6.6% (i.e., by $857,446.02) to account for the sequester reduction percentage in effect at the time of the payment, yielding $12,134,160.40. He also withheld Federal income tax of $2,594,769.17, yielding the net payment of $9,539,391.23.

In January 2019, the whistleblowers filed the Motions. They argue that the January 2017 Decisions expressly state that they are entitled to a combined award of $17,791,607, or $8,895,803.50 each. They do not challenge the income tax withheld from the awards, but they "ask that the Court issue an order that Respondent pay Petitioners the sequester reduction subtracted from the payment Respondent wired to Petitioners' counsel."

The Commissioner objects to the Motions. He contends that the whistleblowers have been paid in full.

---

[5](...continued)
to Motion To Enforce Judgement and To Obtain a Court Ordered Remedy, filed March 22, 2019. The Motions state that "[o]n May 14, 2018, the IRS wired $9,709,754.86." The record does not reveal the reasons for the disparity in these two amounts.

Discussion

I.      Jurisdiction

Neither party questions our authority to reach the merits of the whistleblowers' Motions. Nevertheless, in view of the procedural posture of these cases, and particularly given that the Motions were filed long after the January 2017 Decisions became final,[6] we begin by considering whether we have that authority.

A.      Applicable Framework

As an initial matter, we note that, like all Federal courts, we are a court of limited jurisdiction. Estate of Wenner v. Commissioner, 116 T.C. 284, 286 (2001) (citing Flight Attendants Against UAL Offset v. Commissioner, 165 F.3d 572, 578 (7th Cir. 1999)). We exercise jurisdiction only over matters that Congress expressly authorizes us to consider. See sec. 7442; Estate of Young v. Commissioner, 81 T.C. 879, 881 (1983). Of course, we always have jurisdiction

---

[6]As noted above, the Commissioner appealed the January 2017 Decisions, and the U.S. Court of Appeals for the District of Columbia Circuit dismissed that appeal on March 29, 2018, based on the parties' joint stipulation for dismissal. Under section 7481(a)(2)(A), the January 2017 Decisions became final "[u]pon the expiration of the time allowed for filing a petition for certiorari," that is, on June 27, 2018. See 28 U.S.C. sec. 2101(c) (2018). The Motions were filed in January 2019, more than seven months after the January 2017 Decisions became final and more than eight months after the payment was made.

to determine whether we have jurisdiction. Cooper v. Commissioner, 135 T.C. 70, 73 (2010). And we must assure ourselves of our jurisdiction even when not asked to by the parties. Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1004 (1978). Our jurisdiction is neither expanded nor contracted by the positions of the parties, and is a question that we decide independently. Ringo v. Commissioner, 143 T.C. 297, 299 (2014). As we have said before:

> "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Envt., 523 U.S. 83, 94 (1998). We cannot avoid the jurisdictional issue by assuming hypothetical jurisdiction and disposing of the case on the merits. Id.

Blonien v. Commissioner, 118 T.C. 541, 551 (2002). "The truistic constraint on the federal judicial power * * * is this: A federal court may not decide cases when it cannot decide cases, and must determine whether it can, before it may." Cross-Sound Ferry Servs., Inc. v. ICC, 934 F.2d 327, 340 (D.C. Cir. 1991) (Thomas, J., concurring in part); accord In re Papandreou, 139 F.3d 247, 255 (D.C. Cir. 1998) (quoting Cross-Sound Ferry concurrence with approval).[7]

---

[7]We note that, as Justice Ginsburg explained for a unanimous Court in Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584-585 (1999):

> While Steel Co. reasoned that subject-matter jurisdiction

(continued...)

B.    Jurisdiction With Respect to Whistleblower Actions

These cases involve whistleblower actions.  Section 7623(b)(4) grants us

jurisdiction with respect to such actions as follows:

> Appeal of award determination.--Any determination regarding an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter).

---

[7](...continued)
necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues.  "[A] court that dismisses on . . . non-merits grounds such as . . . personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles underlying Mansfield[, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884)] and Steel Company."  In re Papandreou, 139 F.3d 247, 255 (C.A.D.C. 1998).  It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits. * * *

Moreover, as the D.C. Circuit recently explained in Matar v. Transp. Sec. Admin., 910 F.3d 538, 541 (D.C. Cir. 2018):

> "Steel Co.'s rule of priority does not invariably require considering a jurisdictional question before any nonjurisdictional issue."  [Kaplan v. Cent. Bank of the Islamic Republic of Iran,] 896 F.3d 501, 513 (D.C. Cir. 2018).  Instead, "courts may address certain nonjurisdictional, threshold issues" so long as those issues "can occasion a '[d]ismissal short of reaching the merits.'"  Id. (quoting Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (alteration in original)).

We do not have such "nonjurisdictional, threshhold issues" before us in these cases.

Neither party challenges the Court's jurisdiction to render the January 2017 Decisions. And, as discussed below, we have no reason to conclude we lacked such jurisdiction.

We have previously held that we have the authority to remand a whistleblower action to the Whistleblower Office when that office has abused its discretion. Whistleblower 769-16W v. Commissioner, 152 T.C. 172 (2019). Indeed, we should do so in virtually every case in which we find an abuse of discretion. Id. at 178 ("The validity of the agency determination 'must, therefore, stand or fall on the propriety of that' determination, and if it 'is not sustainable on the administrative record', then the matter must be remanded for further consideration." (citing Camp v. Pitts, 411 U.S. 138, 143 (1973), and SEC v. Chenery Corp., 318 U.S. 80, 94-95 (1943))). But, as the Supreme Court and the D.C. Circuit[8] have held, "[o]n occasion * * * a remand would be futile * * * as only one disposition is possible as a matter of law. In such cases, we retain and decide the issue." George Hyman Constr. Co. v. Brooks, 963 F.2d 1532, 1539 (D.C. Cir. 1992);[9] accord NLRB v. Food Store Emps. Union Local 347, 417

---

[8]Any appeals in these cases would ordinarily be reviewed by the D.C. Circuit. See sec. 7482(b)(1) (flush language).

[9]Berge v. United States, 949 F. Supp. 2d 36, 42-43 (D.D.C. 2013), helpfully
(continued...)

U.S. 1, 8 (1974) (A reviewing court must remand a case in which an administrative agency committed an error of law except where it is "crystal-clear [that the] Board error renders a remand an unnecessary formality." (citing NLRB v. Express Publ'g Co., 312 U.S. 426 (1941), and Comm'ns Workers v. NLRB, 362 U.S. 479 (1960))). This is the uniform conclusion of the Courts of Appeals that have considered the issue.[10]

---

[9](...continued)
summarizes the D.C. Circuit's precedent as follows:

> [The D.C.] Circuit recognizes a narrow exception to * * * [the ordinary remand rule--that is, the general rule that, when an administrative agency errs, the reviewing court ordinarily remands the case to the agency to apply the correct legal standard in the first instance. The exception applies] in cases where "[t]here is not the slightest uncertainty as to the outcome of a[n] [agency] proceeding." A.L. Pharma, Inc. v. Shalala, 62 F.3d 1484, 1489 (D.C. Cir. 1995). In this small subset of administrative law cases, "remand to the agency is an unnecessary formality" because "it is virtually inconceivable that its decisions would differ in any way the second time from that which occurred the first time," FEC v. Legi-Tech, Inc., 75 F.3d * * * [704,] 708-[7]09 [(D.C. Cir. 1996)] (citations omitted), or because there is "only one rational course" for the Agency to follow upon remand, Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Labor Relations Auth., 778 F.2d 850, 862 n.19 (D.C. Cir. 1985). Thus, when "the outcome of a new administrative proceeding is preordained," a district court may forego the futile gesture of remand to the agency. A.L. Pharma, Inc., 62 F.3d at 1489 (citation and quotation marks omitted).

[10]See, e.g., NLRB v. Am. Geri-Care, Inc., 697 F.2d 56, 64 (2d Cir. 1982); Hussain v. Gonzales, 477 F.3d 153, 157-158 (4th Cir. 2007); Zhao v. Gonzales,

(continued...)

In these cases, a remand would have been futile, as the parties had stipulated both the amount of collected proceeds over which there was a dispute (approximately $54 million) and the award percentage (24%). Once the Court decided the meaning of the term "collected proceeds," only one disposition was possible as to the issues that were before the Court. Accordingly, under the authorities cited above, the Court's entry of the January 2017 Decisions was well within the scope of its jurisdiction.

C.    Jurisdiction To Enforce January 2017 Decisions

Since we had jurisdiction to enter the January 2017 Decisions, we consider next whether we have the authority to enforce those decisions. We start with a basic principle that the U.S. Supreme Court summarized more than a century and a half ago:

> Jurisdiction is defined to be the power to hear and determine the subject-matter in controversy in the suit before the court, and the rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree.  [Fn. ref. omitted.]

---

[10](...continued)
404 F.3d 295, 310-311 (5th Cir. 2005); Felisky v. Bowen, 35 F.3d 1027, 1041 (6th Cir. 1994); Ghebremedhin v. Ashcroft, 392 F.3d 241, 243-244 (7th Cir. 2004); Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004); Nielson v. Sullivan, 992 F.2d 1118, 1121-1122 (10th Cir. 1993); Davis v. Shalala, 985 F.2d 528, 534-535 (11th Cir. 1993); see also Kristin E. Hickman & Richard J. Pierce, Jr., Administrative Law Treatise § 20.1 (6th ed. 2019).

Riggs v. Johnson Cty., 73 U.S. (6 Wall.) 166, 187 (1867) (citing Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) 657, 718 (1838)); accord Peacock v. Thomas, 516 U.S. 349, 356 (1996).  Recognizing this universal rule, when Congress established this Court as "a court of record" in 1969, sec. 7441; see also Freytag v. Commissioner, 501 U.S. 868, 888-892 (1991) (observing that this Court exercises a portion of the judicial power of the United States), Congress made clear that the Court "shall have such assistance in the carrying out of its lawful writ, process, order, rule, decree, or command as is available to a court of the United States," sec. 7456(c).  In adopting section 7456(c), Congress confirmed the Court's power to enforce its own orders.[11]

---

[11]The first sentence of section 7441 and the relevant portion of what is now section 7456(c) were enacted by the Tax Reform Act of 1969, Pub L. No. 91-172, secs. 951 and 956, 83 Stat. at 730, 732.  Those provisions were first introduced in a Senate amendment (in the nature of a substitute) to a House bill.  Committee Amendment, H.R. 13270, 91st Cong., 1st Sess. (Nov. 21, 1969).  "For those who consider legislative history relevant," Warger v. Shauers, 574 U.S. 40, 48 (2014), we note that, in explaining the provisions proposed in the Senate amendment, the Senate Finance Committee observed that the "amendments are * * * concerned with making the Tax Court * * * [a] court * * * and expanding its powers accordingly," S. Rept. No. 91-552, at 303 (1969), 1969-3 C.B. 423, 615 (emphasis added).  Therefore, "[t]he bill establishes the Tax Court as a court" and "[i]n accordance with this change, the Tax Court is given the same powers regarding * * * the carrying out of its writs, orders, etc., that Congress has previously given to the District Courts."  Id. at 304, 1969-3 C.B. at 615-616.  The conference report noted that the final bill followed the Senate amendment, see H.R. Rept. No. 91-782, at 341 (1969), 1969-3 C.B. 644, 682, and summarized the changes as follows:

(continued...)

This conclusion is not affected by the long line of cases holding that section 7481 and its predecessors impose special considerations regarding the finality of decisions of the Tax Court. See, e.g., Helvering v. N. Coal Co., 293 U.S. 191, 192 (1934) (denying petitions for rehearing that were filed after the underlying decisions had become final under the predecessor to section 7481); Kenner v. Commissioner, 387 F.2d 689, 690-691 (7th Cir. 1968) ("It has been settled that * * * finality [under section 7481] precludes any subsequent reconsideration by the tax court, at least on such grounds as mistake, newly discovered evidence, and the like. It has also been decided that where such finality is reached by lapse of the prescribed period after decision by the Supreme Court it precludes further consideration by the Supreme Court on application for rehearing." (Fn. ref. omitted.)); see also Harbold v. Commissioner, 51 F.3d 618, 622 (6th Cir. 1995) (applying the same principle); Toscano v. Commissioner, 441 F.2d 930, 932-933 (9th Cir. 1971) (same), vacating 52 T.C. 295 (1969). A motion to enforce a decision already issued does not challenge the finality of our prior proceedings, the timing of which is determined under section 7481. To the

---

[11](...continued)
(1) "The Tax Court is established as a court[;]" and (2) "The Tax Court is given powers regarding * * * the carrying out of its writs, orders, etc., equivalent to those which Congress has previously given to the district courts," id.

contrary, such a motion seeks conformity with a final decision already made. Accordingly, entertaining the motion is entirely consistent with section 7481. Of course, section 7481 and the long line of cases applying it would provide an insurmountable obstacle for a party that, under the guise of a motion to enforce, sought to relitigate matters that were, or could have been, considered in our prior proceedings.

Likewise, the inclusion in the Code of section 6512(b)(2) does not undermine the scope of authority granted under section 7456(c). Section 6512(b)(2), titled "Jurisdiction to enforce," was adopted in 1988. It expressly grants the Court "jurisdiction to order * * * [a] refund," sec. 6512(b)(2), if (1) the Court has determined an overpayment, see sec. 6512(b)(1), and (2) the Secretary has failed to refund that overpayment within 120 days after the Court's decision has become final, sec. 6512(b)(2). It might be argued that the specific grant of authority under section 6512(b)(2) to order something related to an existing decision should be read to require a similar specific grant of authority for the Court to enforce its decisions in all cases, implying that the authority reflected in section 7456(c) might not be sufficient as suggested above. That argument would be misplaced. Section 6512(b)(2) does not address itself to the enforcement of an existing decision. That is, it does not simply give us additional authority to

tell the Commissioner that we really mean what we have previously said. Rather, section 6512(b)(2) grants us additional authority to decide a new question-- namely, whether, in light of our prior conclusion that an overpayment exists, the taxpayer is actually entitled to a refund. This additional authority is necessary because our jurisdiction under section 6512(b)(1) is limited to deciding the amount of an overpayment. See, e.g., Weber v. Commissioner, 138 T.C. 348, 366-367 (2012); Estate of Quick v. Commissioner, 110 T.C. 440, 443-444 (1998), supplementing 110 T.C. 172 (1998). But the existence of an overpayment does not necessarily mean that a refund is due. See, e.g., Empire Ordnance Corp. v. Harrington, 249 F.2d 680, 681-682 (D.C. Cir. 1957) (citing United States ex rel. Girard Tr. Co. v. Helvering, 301 U.S. 540, 542-543 (1937)); Weber v. Commissioner, 138 T.C. at 367. The overpayment could be credited to satisfy another liability of the taxpayer, thereby eliminating the refund. Sec. 6402(a); Empire Ordnance Corp., 249 F.2d at 682; Weber v. Commissioner, 138 T.C. at 367. Thus, an order enforcing our decision finding an overpayment would not automatically result in an order that a refund be made. Section 6512(b)(2) is therefore necessary to grant us the authority to review the additional facts required for deciding whether a refund is in fact due. By contrast, in a case under section 7623, our inquiry focuses on the determination made by the Whistleblower

Office, and an order to enforce our decision would not require a review of ancillary matters, such as, for example, the whistleblower's own outstanding tax liabilities.

In view of the foregoing, we conclude that we have the authority to consider the merits of the whistleblowers' Motions. The concurring opinion suggests that we should have avoided addressing "the interesting and difficult theoretical question whether we have the power to 'enforce' our decisions" and disposed of these cases by issuing "an order giving the answer that appears in [P]art II of the opinion of the Court." Concurring op. p. 27.

But the path the concurring opinion suggests is not open to us. That path is based on the premise that "the [M]otions in fact simply call on us to clarify our decisions." Id. This premise is incorrect. The whistleblowers seek no mere clarification of the January 2017 Decisions. On the contrary, they maintain that the January 2017 Decisions are "clear and unambiguous." "Memorandum of Law and Points of Authorities in Support of Petitioner's [sic] Motion To Enforce Order and Obtain a Court-Ordered Remedy" at 3. What the whistleblowers want is for the Court to enforce the January 2017 Decisions.

The title of the whistleblowers' submission, the analysis and authorities cited in that submission, and the proposed order included with that submission all

confirm this point. The full title of the submission is "Petitioners' Motion To Enforce Judgment and To Obtain a Court-Ordered Remedy." The opening paragraph of the submission highlights "the Court's inherent power to enforce its own judgments and decrees" and directs us to rule 70(a) of the Federal Rules of Civil Procedure. That rule is titled "Enforcing a Judgment for a Specific Act." Further, a proposed order included with the submission contains the following statement: "Respondent is directed that within 90 days the IRS shall pay Petitioners the portion of the award it previously withheld due to sequestration."

In view of the relief that the whistleblowers seek (an order enforcing our January 2017 Decisions by directing the Commissioner to undertake certain actions), we cannot avoid addressing whether we have the authority to enforce the January 2017 Decisions. See supra Part I.A. But, also in view of the relief that the whistleblowers seek, we need not decide here the precise contours of our authority to enforce our decisions. See infra Part II. Cf. concurring op. p. 27.

Assured of our authority to consider the merits of the whistleblowers' Motions, we turn next to considering whether the Motions should be granted.

II.     The Merits of the Motions

The Motions argue that, under the January 2017 Decisions, the whistleblowers are entitled to receive a combined award of $17,791,607, or $8,895,803.50 each.  They specifically "ask that the Court issue an order that Respondent pay Petitioners the sequester reduction subtracted from the payment Respondent wired to Petitioners' counsel."  The Motions in effect maintain that, under the January 2017 Decisions, the Commissioner is obligated to pay to the whistleblowers a specific amount without regard to any other considerations.  The whistleblowers ignore the terms of the partial settlement and misinterpret the Court's January 2017 Decisions.

As an initial matter, we note that the parties explicitly addressed the sequestration issue in their partial settlement agreement.  There, the parties agreed that $20,000,001 paid to the Government as restitution constituted collected proceeds and that the whistleblowers were entitled to an award of 24%, less a sequester reduction.  The parties left for judicial resolution the treatment of the remaining $54,131,693.42 collected by the Government, but they expressly noted that "[a]ny such further payment will be reduced by the sequester reduction percentage in effect at the time of payment."  (Emphasis added.)  Although the parties did not inform the Court of the precise terms of their settlement, they did

explain that a settlement had been reached. And the settlement provided the backdrop for our subsequent proceedings.

The whistleblowers now seek to back out of their deal, contending that our entry of the January 2017 Decisions in specific amounts foreclosed their agreement to reduce any further award payments by the applicable sequester reduction percentage when the award payments were made. We disagree. Nothing in the January 2017 Decisions set aside this express agreement of the parties.

The January 2017 Decisions do not purport to specify a particular amount that the Commissioner must pay to each whistleblower in all events. Rather, the January 2017 Decisions set out the gross amounts "calculated" as part of the Court's Opinion, based on the underlying "collected proceeds" and the "award percentage" the parties had stipulated in connection with that Opinion. As the decision in docket No. 21276-13W states:

> On August 3, 2016, the Court rendered an Opinion (147 T.C. No. 4) with respect to petitioners' claim for a whistleblower award under I.R.C. sec. 7623(b). As part of the Opinion, the Court calculated that the two petitioners were entitled to a combined whistleblower award of $17,791,607. Pursuant to that determination, it is

ORDERED and DECIDED that Whistleblower 21276-13W is entitled to a whistleblower award of $8,895,803.50.

The decision in docket No. 21277-13W contains virtually identical statements.

In short, the January 2017 Decisions may not properly be read as a determination of a sum certain payable to the whistleblowers no matter what. A simple point illustrates why this is so. As shown above, the amount of the award for Whistleblower 21276-13W reflected in the decision in docket No. 21276-13W is equal to half of the total amount calculated in the Opinion--i.e., $8,895,803.50 = $17,791,607 × 50%. The total amount calculated in the Opinion in turn was determined by multiplying the total amount of collected proceeds ($74,131,694) by the award percentage agreed to by the parties (24%)--i.e., $17,791,607 = $74,131,694 × 24%. The total amount of collected proceeds consisted of two portions, the $20,000,001 with respect to which there was no dispute and the $54,131,693 (consisting of the criminal fine of $22,050,000 and the civil forfeitures of $32,081,693) with respect to which there was a dispute. Before the Court issued the August 2016 Opinion, the whistleblowers had already been paid $4,473,600 with respect to the award attributable to the $20,000,001 that was not in dispute. That payment was computed by multiplying the agreed-upon collected proceeds of $20,000,001 by the agreed-upon award percentage of 24% and

subtracting from that amount a 6.8% sequester reduction--i.e., $4,473,600 = ($20,000,001 × 24%) − ($20,000,001 × 24% × 6.8%). If the January 2017 Decisions were read as requiring the Commissioner to pay to the whistleblowers the total sum certain reflected in the decision documents (the combined $17,791,607), it could be argued that the IRS could not reduce that amount by the $4,473,600 previously paid to the whistleblowers. Similarly, under that reading, the whistleblowers would conceivably be entitled to be paid the $326,400 ($20,000,001 × 24% × 6.8%) sequestration amount that had previously been withheld from the payment made with respect to the $20,000,001 agreed-upon collected proceeds. After all, as shown above, the overall amount reflected in the January 2017 Decisions related to all collected proceeds, not just to the collected proceeds that were in dispute.

Such a reading of the January 2017 Decisions leads to an insupportable result and appears to be too extreme even for the whistleblowers. The Motions do not assert, and appear instead to disclaim, any entitlement to the $4,473,600 previously paid to the whistleblowers, or to the $326,400 sequestration amount that was withheld from that prior payment, or to the income tax withheld from the later payment. These apparent concessions confirm that the whistleblowers' reading of the January 2017 Decisions is incorrect. Contrary to their assertions,

the January 2017 Decisions simply calculated the gross award amounts that would follow based on the numbers the parties had presented to the Court. The January 2017 Decisions were not intended to upset the narrowing of the issues that the parties (at the urging of the Court after the issuance of the June 2015 Opinion) had agreed upon in connection with setting up the "collected proceeds" issue for the Court's resolution. Nothing in the January 2017 Decisions sets aside this express agreement of the parties.

In short, the Commissioner's actions here were consistent with the Court's January 2017 Decisions.[12] A deal is a deal, and, as we concluded in similar circumstances in another whistleblower case, the whistleblowers must abide by the bargain they struck. See Whistleblower 4496-15W v. Commissioner, 148 T.C. 425, 432-437 (2017).

These cases should, however, serve as a cautionary tale to parties that reach partial settlements. Filing with the Court complete copies of the agreements that

---

[12]In light of our conclusion on the proper reading of the January 2017 Decisions based on the parties' express agreement, we need not address the whistleblowers' remaining contentions with respect to the applicability of the rules governing sequestration, although we note that we recently rejected the claim that sequestration does not apply to whistleblower awards. See Lewis v. Commissioner, 154 T.C. at ___ (slip op. at 27-29).

Moreover, in light of our conclusion that the Motions should be denied, we need not decide today what form our enforcement action might take in an appropriate case.

reflect any settlements reached by the parties gives the Court a fuller picture of the disputes that remain at issue and permits the Court to render decisions that appropriately take into account the parties' agreements. That, in turn, may spare the parties the inconvenience and expense of postdecision litigation avoidable through greater transparency.

## Conclusion

For the reasons stated above, the Motions will be denied.

An appropriate order will be issued.

Reviewed by the Court.

FOLEY, GALE, THORNTON, MORRISON, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, and GREAVES, JJ., agree with this opinion of the Court.

JONES, J., concurs in the result in Part II of this opinion.

PARIS and KERRIGAN, JJ., did not participate in the consideration of this opinion.

GUSTAFSON, J., concurring in the result:  Petitioners filed "Motion[s] to Enforce" our decisions.  Notwithstanding the titles of the motions and the authorities they invoke, the motions in fact simply call on us to clarify our decisions.  I would have construed them as motions to clarify and would have issued an order giving the answer that appears in part II of the opinion of the Court.

Instead, the majority took these motions as an occasion to address, in part I of the Opinion, the interesting and difficult theoretical question whether we have the power to "enforce" our decisions.  There no controversy between the parties about this question.  The opinion of the Court says the answer is "Yes"; but we still do not know what "enforcing" a decision might mean--unless it means nothing more than issuing an order saying what we meant.  We clarify our decisions from time to time (usually if not always in unpublished orders), and no one ever doubted that we have the power to do so.

If the circumstance ever arises in which we actually need to know whether we can "enforce" a decision (other than by merely clarifying ourselves), then that would be the time to answer that question--informed by advocacy and faced with a concrete question about real "enforcement".  In the meantime, we do not know the significance (if any) of what the Court purports to decide today.